S.G. LOEWENDICK & SONS, INC., Petitioner,

v.

Robert B. REICH, Secretary of Labor, United States Department of Labor, and Occupational Safety and Health Review Commission, Respondents.

No. 94–1662.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 29, 1995.

Decided Nov. 21, 1995.

Roger L. Sabo, Columbus, OH, argued the cause and filed the briefs, for petitioner.

Ronald J. Gottlieb, Far Rockaway, NY, United States Department of Labor, argued the cause, for respondents, with whom Joseph M. Woodward, Associate Solicitor, and Barbara U. Werthmann, Counsel, United States Department of Labor, Washington, DC, were on the brief. Ann S. Rosenthal, Counsel, United States Department of Labor, Arlington, VA, entered an appearance.

Before: BUCKLEY, GINSBURG, and TATEL, Circuit Judges.

TATEL, Circuit Judge:

The Secretary of Labor cited S.G. Loewendick & Sons, Inc., for violating a safety regulation prohibiting workers from riding on a load suspended by a crane. The Occupational Safety and Health Review Commission sustained the citation and assessed a fine. Loewendick challenges the fine, contending that the backhoe it suspended from a crane was a "personnel platform" exempt from the general prohibition of riding crane-suspended loads. On its surface, this case involves an arcane dispute about whether a specially modified backhoe suspended by a crane is a personnel platform within the meaning of a technical safety regulation. At its core, however, this case implicates a fundamental requirement of administrative law—that administrative agencies base their actions on reasoned decisionmaking. Because the Secretary based his citation and the Commission its fine on unreasonable interpretations of the relevant regulations, we vacate the finding of liability and set aside the fine.

I.

The Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 651–678 (1988 & Supp. V 1993), authorizes the Secretary of Labor to promulgate occupational safety and health standards. The Secretary has delegated this responsibility to the Assistant Secretary for Occupational Safety and Health, the head of the Occupational Safety and Health Administration. *See Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 147 n. 1, 111 S.Ct. 1171, 1174, 113 L.Ed.2d 117 (1991). Pursuant to its delegated authority, OSHA has adopted several regulations governing the use of cranes and derricks. 29 C.F.R. § 1926.550 (1994). One provision, paragraph (b)(2), prohibits workers from riding on a load suspended from a crane. § 1926.550(b)(2). Another, subsection (g), creates an exception to this general prohibition of "riding the load":

> The use of a crane or derrick to hoist employees on a personnel platform is prohibited, except when the erection, use, and dismantling of conventional means of reaching the worksite, such as a personnel hoist, ladder, stairway, aerial lift, elevating work platform or scaffold, would be more hazardous, or is not possible because of structural design or worksite conditions.

§ 1926.550(g)(2).

Thus, despite paragraph (b)(2)'s prohibition of riding a load, subsection (g) permits hoisting a personnel platform by crane to perform a workplace task when conventional methods would be more hazardous or impos-

sible. Other provisions of subsection (g) establish detailed safety standards for crane-hoisted personnel platforms. *See* § 1926.550(g)(3)–(7). Paragraph (g)(3), for example, includes instructions on the proper operation of a crane hoisting a personnel platform. Paragraph (g)(4) lists specific design requirements, including that a qualified engineer design the platform, and that the platform have a guard rail, smooth edges, a grab rail inside its entire perimeter, sufficient headroom to permit employees to stand upright, and a sign indicating the platform's weight and its rated load capacity or maximum intended load. Paragraphs (g)(5) through (g)(7) contain further instructions on testing and using personnel platforms. Apart from these technical specifications, subsection (g) nowhere defines "personnel platform."

Petitioner S.G. Loewendick & Sons, Inc., contracted to demolish a portion of a bridge in Fairmont, West Virginia. The contract required Loewendick to remove the top twelve feet of four concrete piers, leaving the bottom seventy feet of each intact. Before beginning work, Loewendick conducted an analysis of three possible methods of demolishing the top twelve feet of the piers. Rejecting explosives and jackhammers, Loewendick concluded that using a hydraulic ram attached to a backhoe suspended by a crane would be the safest course of action. Loewendick had used this method on six prior occasions. It worked as follows. Using two hoisting systems, Loewendick's crane lifted the backhoe to the pier. A worker seated inside the backhoe operated a hydraulic demolition ram extending from the rear of the vehicle. To stabilize the backhoe, Loewendick modified the rear of the vehicle to sit firmly on each pier. As a precaution, the backhoe operator used both the backhoe's ordinary seat belt and an additional safety belt with lanyards attached to both sides of the backhoe.

After seeing a newspaper photograph of the hoisted backhoe, an OSHA compliance officer inspected Loewendick's worksite. The compliance officer told Loewendick's representative that the operation violated OSHA standards, explaining the next day to company vice president David Loewendick that the backhoe did not comply with the regulation prohibiting riding a load. David Loewendick told the compliance officer that the company would continue using the backhoe unless OSHA issued a stop-work order. According to the Secretary, an OSHA supervisor later informed David Loewendick that the company had violated paragraph (b)(2)'s prohibition of riding a load and that the backhoe was not a "personnel platform." Brief for the Secretary of Labor at 14. Despite these warnings, Loewendick completed the project using the backhoe. No workers were injured, nor did any complain about the hoisting of the backhoe.

OSHA cited Loewendick for willful violation of paragraph (b)(2)'s prohibition of riding a load and for other safety violations. After a hearing, an administrative law judge vacated the paragraph (b)(2) citation. *Loewendick Contractors,* OSHRC Docket Nos. 91–2487, 91–2618, 1993 WL 69995 (ALJ Mar. 1, 1993). Finding that Loewendick used the backhoe "as an elevated platform from which work was performed," the ALJ concluded that the backhoe was a personnel platform, "not a load simply being transported from one point to another." *Id.,* slip op. at 18, 1993 WL 69995, at *8. According to the ALJ, the Secretary should have cited Loewendick under subsection (g), not paragraph (b)(2). The ALJ "reach[ed] no conclusions as to whether the operation in question complied with" subsection (g)'s technical requirements for personnel platforms. *Id.,* slip op. at 24, 1993 WL 69995, at *10.

Reversing the ALJ, the Commission concluded for two reasons that the backhoe was not a personnel platform: because it was originally designed as a backhoe, not a personnel platform; and because the backhoe itself performed work, rather than simply hoisting employees to perform the work. *See S.G. Loewendick & Sons, Inc.,* OSHRC Docket No. 91–2487, slip op. at 4–5, 16 O.S.H. Cas. (BNA) 1954, 1956–57 (Rev.Comm'n Aug. 9, 1994). The Commission thus concluded that Loewendick had violated paragraph (b)(2)'s prohibition of riding a load. Because Loewendick had resumed using the backhoe after OSHA's warnings, the Commission

found Loewendick's violation willful, assessing a $33,000 fine. *Id.*, slip op. at 9, 16 O.S.H. Cas. (BNA) at 1959. Loewendick petitions for review of the Commission's order.

## II.

We begin with the appropriate standard of review, which is both critical to our conclusion and a little unusual because of the unique relationship between the Commission and the Secretary. Each has distinct regulatory responsibilities under the OSH Act. *See Martin*, 499 U.S. at 147–48, 111 S.Ct. at 1174–75. The Secretary sets occupational safety and health standards, issues citations, and assesses fines for violations of OSHA regulations. 29 U.S.C. §§ 665, 658–659. The OSH Act gives adjudicatory powers to the Commission, a three-member body appointed by the President and confirmed by the Senate. §§ 651(b)(3), 661. Because the Commission's powers are solely adjudicatory, the Secretary, not the Commission, has the authority to make enforcement decisions and to offer definitive interpretations of OSHA regulations. As the Supreme Court explained in *Martin*, Congress designed the Commission to be a " 'neutral arbiter' " possessing "the type of nonpolicymaking adjudicatory powers typically exercised by a *court* in the agency-review context." *Martin*, 499 U.S. at 154–55, 111 S.Ct. at 1178 (quoting *Cuyahoga Valley Ry. v. United Transp. Union*, 474 U.S. 3, 7, 106 S.Ct. 286, 288, 88 L.Ed.2d 2 (1985)). Thus, for example, the Commission may not issue a citation that the Secretary has withdrawn. *See Cuyahoga Valley Ry.*, 474 U.S. at 6–7, 106 S.Ct. at 287–88. For the same reason, the Commission must defer to the Secretary's reasonable interpretations of OSHA regulations, even when the Secretary offers those interpretations for the first time during litigation before the Commission. *Martin*, 499 U.S. at 157, 111 S.Ct. at 1179 ("[T]he Secretary's litigating position before the Commission is as much an exercise of delegated lawmaking powers as is the Secretary's promulgation of a workplace health and safety standard.").

■ Our review of Commission factfinding and application of law to facts follows standard administrative law principles. We accept the Commission's findings of fact if they are "supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 660(a). We accept the Commission's other findings and conclusions if they are not arbitrary, capricious, an abuse of discretion, or contrary to law. 5 U.S.C. § 706(2)(A) (1994).

■ Well-known principles govern our review of agency interpretations of agency regulations. We owe "substantial deference" to the agency's interpretation, which has " 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.' " *Thomas Jefferson Univ. v. Shalala*, —— U.S. ——, ——, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)). Absent constitutional or statutory violations, the only circumstance in which we do not defer is where "an 'alternative reading is compelled by the regulation's plain language or by other indications of the [agency's] intent at the time of the regulation's promulgation.' " *Id.* at —— – ——, 114 S.Ct. at 2386–87 (quoting *Gardebring v. Jenkins*, 485 U.S. 415, 430, 108 S.Ct. 1306, 1314, 99 L.Ed.2d 515 (1988)). When considering orders of the Occupational Safety and Health Review Commission, we tailor our review to the distinct functions of the Commission and of the Secretary. Because the Secretary, not the Commission, is the policymaker, we defer to the Secretary's interpretation, unless, of course, the interpretation is unreasonable or plainly contrary to the regulation's language or purpose. *See Martin*, 499 U.S. at 156–57, 111 S.Ct. at 1178–79. According to *Martin*, we defer even where the Secretary offers his interpretation in the context of litigation before the Commission. *See id.* at 157, 111 S.Ct. at 1179 ("The Secretary's interpretation of OSH Act regulations in an administrative adjudication ... *is* agency action, not a *post hoc* rationalization of it."). We do not owe the same deference to interpretations independently offered by the Commission, which has no more authority to depart from the Secretary's interpretations of OSHA regulations than do we. *See id.* at 154, 156, 111 S.Ct. at 1178, 1179. As we have explained, a review-

ing court should treat the Commission "as equivalent to a 'nonpolicymaking' district court." *Molineaux v. United States*, 12 F.3d 264, 267 (D.C.Cir.1994) (quoting *Martin*, 499 U.S. at 154, 111 S.Ct. at 1178). In considering the meaning of OSHA regulations, then, we must carefully separate the Secretary's arguments before the Commission from the Commission's own interpretations. We defer to the former, not the latter.

### III.

■ Loewendick's principal challenge is that the Secretary improperly cited it for violating paragraph (b)(2)'s prohibition of riding a load. Arguing that subsection (g) establishes a personnel platform exception to paragraph (b)(2)'s prohibition of riding a load, Loewendick asserts that an employer using a personnel platform—even a platform failing to meet some of subsection (g)'s specifications—has not violated paragraph (b)(2). According to the Secretary, allowing a worker to ride a noncomplying personnel platform violates both paragraph (b)(2)'s prohibition of riding a load and subsection (g). The ALJ agreed with Loewendick, as do we.

OSHA's intent regarding the relationship between paragraph (b)(2) and subsection (g) is clear from their histories. Paragraph (b)(2), adopted in 1971, does not itself expressly prohibit riding a load. Instead, it incorporates by reference crane safety requirements published by the American National Standards Institute. 29 C.F.R. § 1926.550(b)(2), *incorporating* ANSI B30.5–1968, Safety Code for Crawler, Locomotive and Truck Cranes. The referenced ANSI safety code for cranes provides that "[t]he operator shall not hoist, lower, swing, or travel while anyone is on the load or hook." ANSI B30.5–1968 ¶ 5–3.2.3(e), *reprinted in* Addendum to Brief for Petitioner at 5–19.

Soon after adopting this ban on riding a load, OSHA recognized that hoisting a personnel platform by crane might under some circumstances be the safest way for an employer to perform certain construction tasks. Beginning in 1975, therefore, OSHA issued a series of guidelines and instructions providing that in limited circumstances it would not treat hoisting a personnel platform as a viola-

tion of paragraph (b)(2). *See* 53 Fed.Reg. 29,116, at 29,116 (1988). As last issued in 1983, these instructions listed detailed requirements for personnel platforms, stating that "OSHA Compliance officers w[ould] cite [paragraph (b)(2) ] if the employer fail[ed] to comply with the guidelines of this instruction." OSHA Instruction STD 1–11.2B § F(3), *reprinted in* [1982–1983 Developments Transfer Binder] Empl. Safety & Health Guide (CCH) ¶ 12,882, at 17,283.

By 1988, OSHA had determined that many employers were unaware of these instructions. To solve this problem, OSHA adopted subsection (g) to provide clear regulatory language spelling out a limited exception to paragraph (b)(2) for personnel platforms. In adopting subsection (g), OSHA said it "believe[d] that the primary cause of non-compliance [was] the lack of clear regulatory language." 53 Fed.Reg. at 29,117. OSHA noted that paragraph (b)(2) "provide[d] no direct regulatory guidance," but "simply incorporate[d] ... by reference" outdated ANSI crane regulations. *Id.* OSHA explained:

> Because of this problem of outdated ANSI Standards, OSHA has avoided the use of incorporation by reference whenever possible in recent years, and has attempted to include all relevant provisions within the regulatory text.
>
> .... Therefore ... the Agency is promulgating this standard to eliminate any uncertainty about what is required. OSHA expects that employers will comply with the requirements of paragraph (g) of § 1926.550....

*Id.*

OSHA thus made it clear that employers should henceforth look to subsection (g) for instructions governing the use of personnel platforms. A personnel platform failing to meet the specific requirements of subsection (g) would violate that provision, not paragraph (b)(2). Because the Secretary's interpretation of paragraph (b)(2) and subsection (g) is contrary to OSHA's intent at the time OSHA promulgated subsection (g), it is not entitled to deference. *See Thomas Jefferson Univ.*, —— U.S. at —— – ——, 114 S.Ct. at

2386–87; *Gardebring,* 485 U.S. at 430, 108 S.Ct. at 1314.

At oral argument, counsel for the Secretary claimed that it would have made no difference whether the Secretary had cited Loewendick under paragraph (b)(2) or subsection (g) because the fine could have been the same under either. But we cannot assume that the Commission would assess equal fines for violations of subsection (g)'s technical specifications and paragraph (b)(2)'s broader ban on riding a load. More important, neither the Commission nor the ALJ made findings regarding whether Loewendick's backhoe complied with the technical requirements of subsection (g). Because the Commission's functions are solely adjudicatory, even if it had made such findings, it would have had no authority to issue a citation the Secretary had declined to issue. *See Cuyahoga Valley Ry.,* 474 U.S. at 6–7, 106 S.Ct. at 287–88. Therefore, we can sustain Loewendick's fine under paragraph (b)(2) only if Loewendick's backhoe does not fall within subsection (g)'s personnel platform exception to paragraph (b)(2). We turn to that issue.

### IV.

According to the Commission, whether Loewendick's modified backhoe is a personnel platform is a question of fact. *Comm'n Decision,* slip op. at 4, 16 O.S.H. Cas. (BNA) at 1956. The Secretary argues that it is a mixed question of law and fact. Brief for Secretary at 24. Although the Secretary is undoubtedly correct, we focus here on the question of law underlying the Commission's application of subsection (g) to the facts of this case: the meaning of the term "personnel platform." We therefore review the Secretary's and the Commission's interpretations of subsection (g) pursuant to the standards set forth in *Martin*—we accept the Secretary's interpretation of the term "personnel platform" unless it is unreasonable or inconsistent with the language of subsection (g) or with OSHA's intent at the time it promulgated subsection (g); we review the Commission's decision for consistency with the Secretary's interpretation and with the language of the regulation, and for reasonableness.

■ The Secretary first argues that an object is not a personnel platform "unless it ... complies with all structural and use requirements of paragraph (g)." *Id.* at 23–24. Each of subsection (g)'s provisions establishing specific requirements for personnel platforms, however, clearly presupposes the existence of a personnel platform to which the requirements apply. For example, "[a] grab rail shall be installed inside the entire perimeter *of the personnel platform,*" 29 C.F.R. § 1926.550(g)(4)(ii)(B) (emphasis added); *"[t]he personnel platform* shall be conspicuously posted with a plate or other permanent marking which indicates the weight *of the platform* and *its* rated load capacity or maximum intended load," § 1926.550(g)(4)(ii)(I) (emphasis added); *"[t]he personnel platform* and suspension system shall be designed by a qualified engineer or a qualified person competent in structural design," § 1926.550(g)(4)(i)(A) (emphasis added); and "[a]ll welding *of the personnel platform* and *its* components shall be performed by a qualified welder," § 1926.550(g)(4)(ii)(H) (emphasis added). Thus, according to the regulation's plain language, a "personnel platform" that lacks a grabrail or a plate indicating its weight, or that was not designed by a qualified engineer or welded by a qualified welder, remains a personnel platform, even though it might not comply fully with subsection (g)'s technical specifications. Under the Secretary's view, however, a personnel platform welded by an unqualified welder or lacking a sign indicating the platform's maximum load would not be a personnel platform at all. This interpretation is not only contrary to the plain language of the regulation, but also inconsistent with the Secretary's assertion in other cases that an object failing to meet some of the requirements of subsection (g) remains a personnel platform. *See, e.g., Secretary of Labor v. Rog's, Inc.,* OSHRC Docket No. 92–2783, 16 O.S.H. Cas. (BNA) 1481, 1482 (ALJ Aug. 30, 1993) (agreeing with the Secretary that boatswain's chair was a "personnel platform" that failed to comply with certain subsection (g) specifications). Indeed, at oral argument in this case, counsel for the Secretary acknowledged a "continuum" of noncompliance: that is, an

object failing to satisfy some of the requirements of subsection (g) would remain a personnel platform for purposes of that provision. Subsection (g) clearly anticipates imperfect platforms.

The Secretary next argues that an object is not a personnel platform under subsection (g) "unless it is specifically designed for the transport of employees by crane." Brief for Secretary at 23. The Commission agreed, explaining that only an object *originally* designed for the transport of employees by crane is a personnel platform for purposes of subsection (g). *See Comm'n Decision*, slip op. at 4–5, 16 O.S.H. Cas. (BNA) at 1956–57. Yet at oral argument, counsel for the Secretary conceded that an object originally designed for another function could later be modified by a qualified engineer for the specific purpose of transporting employees by crane. The Secretary's ambivalence leaves us uncertain of his position. Moreover, nothing in the regulation indicates that the term "personnel platform" cannot include an object originally designed for one function and later competently modified to transport employees by crane. Paragraph (g)(4)(i)(A) requires only that a "personnel platform and suspension system . . . be designed by . . . a qualified person competent in structural design."

Offering still another explanation for the conclusion that Loewendick's modified backhoe was not a personnel platform, the Commission asserted that, whereas "the object of a personnel platform is to position the employee where he can perform the work," Loewendick's backhoe was "designed to perform work itself." *Comm'n Decision*, slip op. at 5, 16 O.S.H. Cas. (BNA) at 1957. According to the Commission, an object cannot be a personnel platform if it has attached to it a mechanical apparatus—here, the hydraulic ram—for the performance of a work function. Under the Commission's reading, if an employer were to attach to a genuine personnel platform any work-performing tool, the personnel platform would not simply become a non-complying personnel platform, but would cease to be a personnel platform at all. The Secretary did not advance this interpretation in his brief before this court, and

for good reason: nothing in the regulation suggests that a personnel platform may not have mechanical tools attached. Indeed, at oral argument, counsel for the Secretary stated that if "something attached to [a personnel platform] didn't affect its stability during the lift, then it might very well qualify as a personnel platform." According to both the Secretary and the Commission, paragraph (g)(2) permits employees to perform work from a personnel platform. Because the regulation allows for the performance of work from a platform, we see no rational explanation for an interpretation that categorically excludes any object with mechanical tools or machines attached to it. In fact, it is conceivable that attaching machines to personnel platforms to perform dangerous tasks would promote worker safety.

Because we find unreasonable the interpretations of subsection (g) offered by the Secretary and the Commission, we cannot sustain their determinations that Loewendick's backhoe was not a personnel platform. In the end, the Commission resorted to invoking what it called "the essential nature of the machine," suggesting that the backhoe lacked the "essential nature" of a personnel platform. *Comm'n Decision*, slip op. at 5, 16 O.S.H. Cas. (BNA) at 1957. With all due respect, if a personnel platform has an ascertainable "essential nature," the Secretary ought to be able to define it. This case thus differs from *American Bridge/Lashcon v. Reich*, No. 94–1557, 70 F.3d 131 (D.C.Cir. Nov. 21, 1995), also decided today, in which this court upholds fines the Commission assessed pursuant to reasonable interpretations of regulatory language that regulated parties could both understand and anticipate.

Congress and the courts require that agency action reflect clear, rational decisionmaking that gives regulated members of the public adequate notice of their obligations. *See, e.g.,* 5 U.S.C. § 706(2)(A); *General Elec. Co. v. EPA,* 53 F.3d 1324, 1328–29 (D.C.Cir.1995). Although the Secretary certainly has the authority to offer definitive interpretations in the context of litigation, as occurred here, the Supreme Court has warned that the Secretary's "decision to use a citation as the initial means for an-

nouncing a particular interpretation may bear on the adequacy of notice to regulated parties ... and on other factors relevant to the reasonableness of the Secretary's exercise of delegated lawmaking powers." *Martin*, 499 U.S. at 158, 111 S.Ct. at 1180 (citations omitted).

Without an adequate explanation from the Secretary or the Commission in this case, we cannot uphold the fine under paragraph (b)(2). Because we set aside the fine on these grounds, we do not decide whether Loewendick's backhoe is a personnel platform under the relevant regulations, nor do we reach the other issues Loewendick raises.

We vacate the Commission's finding of liability and set aside the fine.

*So ordered.*