**RUSH PRESBYTERIAN—ST. LUKE'S MEDICAL CEN- TER, Plaintiff,**

v.

**Tommy G. THOMPSON, Defendant.**

**No. CIV. 01–413(RJL).**

United States District Court, District of Columbia.

Feb. 7, 2005.

Jeffrey A. Lovitky, Attorney at Law, Washington, DC, for Plaintiff.

Linda A. Banks, Sonia M. Orfield, U.S. Dept. of Health & Human Services, Peter Blumberg, Robert E. Leidenheimer, Jr., United States Attorney's Office, Civil Division, Washington, DC, for Defendant.

### MEMORANDUM OPINION AND ORDER

LEON, District Judge.

Rush Presbyterian–St. Luke's Medical Center ("Rush") operates a skilled nursing facility and participates in the Medicare program. Rush brings this action seeking judicial review of a decision by the Administrator of the Health Care Financing Administration ("Administrator") denying a request for an exception to the routine services cost limits. Before this Court are the parties' cross Motions for Summary Judgment. Upon due consideration of the parties' motions and the entire record herein, the Court DENIES plaintiff's Motion for Summary Judgment and GRANTS defendant's Motion for Summary Judgment thereby upholding the Administrator's decision.

### STATUTORY BACKGROUND

Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395, et seq., establishes the Medicare program, which is a federally funded health insurance program for the elderly and disabled. Under Part A of the Medicare program, the Secretary authorizes payments to providers, including skilled nursing facilities ("SNF"), to reimburse reasonable costs for services provided to clients covered by the program.[1] The Secretary is required to adopt "regulations establishing the method or methods to be used, and the items to be included, in determining such costs." 42 U.S.C. § 1395x(v)(1)(A). Under the statute, the Secretary is authorized to establish "limits on the direct or indirect overall incurred costs ... to be recognized as reasonable." Id.

The Secretary has delegated the administration of the Medicare program to the Centers for Medicare and Medicaid Services ("CMS").[2] Pursuant to the regulations promulgated by the Secretary, CMS "establish[es] limits on provider costs recognized as reasonable in determining Medicare program payments." 42 C.F.R. § 413.30(a) (1998).[3] A provider, however, may seek an exception to the cost limits established by CMS. Id. § 413.30(c). These "upward adjustments" permit a provider to receive a reimbursement for costs that exceed the limits if the costs are "reasonable, attributable to [one of] the circumstances specified [in 42 C.F.R. § 413.30(f)(1)-(5)], separately identified by the provider, and verified by the intermediary." Id. § 413.30(f). Fiscal intermediaries, which are generally health insurance companies, assist CMS in the administra-

---

1. A "provider of services" is defined as "a hospital, critical access hospital, skilled nursing facility, comprehensive outpatient rehabilitation facility, home health agency, hospice program, or, for purposes of section 1395f (g) and section 1395n (e) of this title, a fund." 42 U.S.C. § 1395x(u). In addition, "reasonable costs" are defined in part as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services...." Id. § 1395x(v)(1)(A).

2. During the time when the facts in this case arose, CMS was known as the Health Care Financing Administration ("HCFA"). The Court will consider references to CMS and HCFA synonymous.

3. The Court's review is based on the laws, regulations, and other applicable provisions that were in effect in 1998, which is when Rush submitted its exception request.

tion of the Medicare program. *Id.* § 421.100.[4]

In order to seek reimbursement for services, a provider must file an annual cost report with its fiscal intermediary. *Id.* § 413.20(b). After the intermediary reviews the annual cost report, it makes a final determination of allowable Medicare reimbursement and notifies the provider of that determination in the Notice of Program Reimbursement ("NPR"). *Id.* § 405.1803. To request an exception under these regulations, a provider is required to submit a request to the intermediary within 180 days of the intermediary's NPR. *Id.* § 413.30(c). The PRM requires that an exception request filed with an intermediary: (1) be in writing, (2) be filed no later than 180 days from the date of the NPR, (3) specify the type of request, and (4) include all supporting documentation. PRM § 2531.1 (1997). When the intermediary receives the request, it "reviews the request and all supporting documentation to determine if all of the SNF's documentation requirements were met and if necessary, requests additional documentation from the SNF." *Id.* If the provider's exception request is incomplete,

> the request is to be denied by the intermediary, and the intermediary is to instruct the provider that it has 45 days from the date of the intermediary's denial to resubmit the exception request, with all the required documentation....

*Id.* If an exception request is complete, the intermediary "makes a recommendation on

the provider's request to HCFA, which makes the decision." 42 C.F.R. § 413.30(c). Once HCFA makes a decision on the request, the intermediary notifies the provider of HCFA's decision. *Id.* If the provider is dissatisfied with HCFA's decision, it can appeal the decision to the Provider Reimbursement Review Board ("PRRB" or "the Board"). 42 U.S.C. § 1395oo(a). The Administrator may review a final decision of the PRRB either at his own discretion or at the request of HCFA or a party to the PRRB hearing. 42 C.F.R. § 405.1875(a). The Administrator may "affirm, reverse, modify or remand" the PRRB decision. *Id.* § 405.1875(g). And, a final decision by the PRRB or any reversal, affirmance or modification by the Administrator is subject to judicial review. *Id.* § 405.1877(a).

## FACTUAL BACKGROUND

On March 23, 1998, Rush submitted an exception request to its fiscal intermediary ("Intermediary") in response to the NPR for the fiscal year 1995 cost report. Pl. Stmt. Facts ¶ 5. The Intermediary reviewed the exception request and advised Rush that the exception request was incomplete. *Id.* ¶ 9. By letter dated June 15, 1998 ("June 15 letter"), the Intermediary notified Rush that it was treating its request as an initial exception request because "nursing hours per day and cost per diems between years was not submitted for review per PRM 15–1, Section 2534.11." Administrative Record ("R.") at 259. In addition, the Intermediary provid-

---

**4.** CMS has published the Provider Reimbursement Manual ("PRM"), which "provides guidelines and policies to implement Medicare regulations which set forth principles for determining the reasonable cost of provider services...." PRM Forward. Although the PRM was not promulgated pursuant to the notice-and-comment requirements under the APA and therefore does not have the force of law, courts have consistently concluded that

the PRM provides interpretive rules "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." *See e.g., Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99, 115 S.Ct. 1232, 131 L.Ed.2d 106 (1995) (citation and internal quotation marks omitted); *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 947 (6th Cir.2000) (citing cases).

ed detailed information about the deficiencies in Rush's request and informed Rush that "[b]ased on the deficiencies noted above, we are hereby denying your exception request. In accordance with PRM 15–1, Section 2531.1A.2, you will have 45 days from receipt of this rejection to resubmit this exception request with all of the required documentation." *Id.* at 260. On the same date, the Intermediary sent a letter to HCFA explaining that he had denied Rush's exception request because it was incomplete and that he gave Rush 45 days to submit the missing documentation. R. at 257.

In response to the June 15 letter, HCFA sent a letter to the Intermediary on August 14, 1998 ("August 14 letter"). Def. Stmt. Facts ¶ 6. The letter stated in pertinent part:

> We agree with your recommendation to deny [Rush's] an [sic] exception for FY 1995 on the basis that the provider has not submitted documentation as required.
>
> Please advise [Rush] that it has 45 days from the date of your notification to submit the required additional data otherwise this decision is final. If the provider submits the required additional information within 45 days, you can resubmit the request to the HCFA for a final decision.

R. at 894.

On August 6, 1998, Rush submitted additional documentation for its exception request ("August 6 submission"). Pl. Stmt. Facts ¶ 10. And, on August 11, 1998, the same date it received Rush's August 6 submission, the Intermediary notified Rush that the information it provided for the exception request was incomplete and untimely ("August 11 letter"). R. at 266. The Intermediary supplemented the letter with an explanation of the outstanding deficiencies and the reason for its timeliness

decision. *Id.* at 267. The Intermediary also indicated that the decision was final. *Id.*

Rush appealed the Intermediary's decision to the PRRB. Def. Stmt. Facts ¶ 7. Following a hearing, the PRRB issued a decision finding that the Intermediary lacked the authority to deny Rush's request and remanded it to HCFA for a final determination. Pl. Stmt. Facts ¶ 13. The Administrator of HCFA reversed the PRRB ruling and upheld the Intermediary's decision, concluding that the Intermediary acted within its authority in denying the exception request. R. at 8–9. Rush appealed the Administrator's decision to this Court.

### *ANALYSIS*

### I. Standard of Review

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment may support its motion by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting FED. R. CIV. P. 56(c)). In opposing summary judgment, the "nonmoving party [must] go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting FED. R. CIV. P. 56(c), (e)). In determining whether a genuine issue of material fact is in dispute, "[t]he evidence

of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ The Court's review of the Secretary's decision pursuant to 42 U.S.C. § 1395oo(f) is limited. *St. Luke's Hosp. v. Thompson,* 355 F.3d 690, 694 (D.C.Cir. 2004). Agency action should be vacated only if the Court determines that the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Section 706 of the Administrative Procedures Act ("APA") requires this Court to consider the administrative record that was before the Secretary to determine the factors he considered in making his decision. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 419–20, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Based on a review of the full record and the arguments advanced by the parties, the Court finds that the Administrator acted within the scope of his authority when he entered a final decision in the matter and that his decision to reverse the PRRB's decision was neither arbitrary nor capricious. Accordingly, the plaintiff's Motion for Summary Judgment is DENIED, and defendant's Motion for Summary Judgment is GRANTED.

## II. Administrator's Authority to Make a Final Decision

■ The first inquiry this Court must make is whether the Administrator had the authority to issue a final decision. This inquiry requires the Court to determine whether the Administrator, acting on behalf of the Secretary, "properly construed his authority." *Volpe,* 401 U.S. at 416, 91 S.Ct. 814. The regulations regarding provider reimbursement determinations and appeals gives the Administrator

the discretion to review any final decision by the PRRB. 42 C.F.R. § 405.1875(a). If he decides to review a PRRB decision, the Administrator is required to notify the parties of the "particular issues he or she will consider" during the review. *Id.* § 405.1875(d). And, if the Administrator conducts a review, the regulations permit him to affirm, reverse, modify or remand the PRRB's decision. *Id.* § 405.1875(g). Any decision of reversal, affirmance, or modification by the Administrator is a final decision subject to judicial review. *Id.* § 405.1877(a)(2).

In this matter, the Administrator acted within the scope of his authority when he decided to review the PRRB's decision based on requests by HCFA's Center for Health Plans and Providers and the Intermediary. The regulations provide that *any* written decision by the PRRB "shall be final and binding upon all parties." 42 C.F.R. § 405.1871(b). So, the PRRB's decision, which was issued on October 31, 2000, was a final decision subject to review by the Administrator. In addition, the Administrator notified the parties that the review would include evaluating: "whether the Board's decision is in keeping with the pertinent laws, regulations, and other criteria cited by the Board and by the parties in their comments." R. at 21. The notice was sufficient, and as a result, the Administrator met all the necessary obligations to exercise his authority.

## III. The Administrator's Decision

■ Having determined that the Administrator had the authority to review the PRRB's decision, the Court must now determine whether the Administrator's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). To make this determination the Court "must consider whether the decision was based on a consideration of the relevant factors and

whether there has been a clear error of judgment." *Volpe,* 401 U.S. at 416, 91 S.Ct. 814. Although this inquiry should be conducted carefully, it is a narrow inquiry that does not permit the Court to substitute its judgment for that of the Secretary. *Id.*

Rush takes issue with two parts of the Administrator's decision: (1) that the Intermediary had authority to deny Rush's request without sending it to HCFA for a final determination, and (2) that Rush's submission was incomplete.[5] For the following reasons the Court finds that the Administrator's decision on each issue was based on relevant factors and there were no errors in judgment to warrant a reversal of his decision.

### A. Determination that Intermediary Had Authority to Deny Request

 The Administrator's interpretation of the regulations regarding the Intermediary's authority has been the focal point of this litigation. This Court owes substantial deference to an agency's interpretation of its own regulations. *S.G. Loewendick & Sons, Inc. v. Reich,* 70 F.3d 1291, 1294 (D.C.Cir.1995). Indeed, where there are competing interpretations of a regulation, the agency's interpretations must be given "controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Id.* (citations and internal quotation marks omitted).

Here, the Administrator reviewed the law, regulations, and PRM sections that were in effect at the time of Rush's request. Based on a review of these materials, the Administrator concluded that:

[T]he Board's decision that the Intermediary lacked the authority to deny the Provider's exception request is incorrect. The Administrator finds that the PRM provisions in effect at the time the Provider filed its exception request specifically direct the Intermediary to review the exception request and determine if all documentation requirements were met. In addition, the PRM provisions direct the Intermediary to deny an incomplete exception request and to instruct a provider that it has 45 days within which to resubmit its request with the required documentation.... Thus, under the plain language of section 2531 of the PRM, an intermediary has the authority to review and determine the completeness of an exception request.

R. at 7.

Rush argues that the regulation requiring an intermediary to make a recommendation to HCFA is clear and unambiguous and therefore the Administrator inappropriately relied on provisions of the PRM to justify its position. Pl. Reply at 11. This argument, however, is not defensible. Section 2531.1 of the PRM does not set forth a position inconsistent with the regulations. Section 413.30(c) of the regulations requires that an intermediary make a recommendation on the provider's request to HCFA. 42 C.F.R. § 413.30(c). The regulations, however, do not define request. It is the PRM that establishes the requirements that a provider's request must meet in order to receive a determination on the merits by HCFA and to survive a denial by an intermediary. If a submitted re-

---

**5.** The Administrator found that, contrary to the Intermediary's decision, Rush's August 6 submission was timely filed. R. at 8. Rush, of course, does not challenge this decision. The decision, however, was not based on specific evidence that demonstrated the timeliness of Rush's submission. Rather, the Administra-

tor decided that *"based on the absence of evidence* in the record to demonstrate the actual receipt date by the Provider of the June 15, 1998 letter, the Administrator finds that the Provider's August 6, 1998 submission was timely." *Id.*

quest does not meet the requirements set forth in Section 2531.1 of the PRM, the PRM instructs an intermediary to deny the request and give the provider time to resubmit the request. PRM § 2531.1(B).

In *Guernsey Memorial Hospital,* the Supreme Court held that the PRM was intended to assist the agency to interpret the regulations regarding Medicare reimbursement. 514 U.S. at 99, 115 S.Ct. 1232. The Court finds that section 2531.1 of the PRM reasonably interprets the regulation by clarifying the requirements for submitting an exception request for consideration on the merits and advises the public that only complete requests will be considered by HCFA. The Administrator's decision, therefore, was not inconsistent with the Medicare regulations and PRM provisions in effect during the time when Rush made its request, and his reliance on the PRM to interpret the regulations was perfectly appropriate.

**B. Determination That Rush's Request Was Incomplete**

■ Rush also argues that the Administrator failed to provide a sufficient reason for applying the requirements for an initial exception request, and that the Administrator's conclusion that the request was incomplete was not supported by substantial evidence. Pl. Mot. at 18–26. For the following reasons, the Court disagrees.

■■ The Court must review the agency's action to determine if it can "discern a reasonable path from the facts and considerations before the [agency] to the decision it reached." *Neighborhood TV Co. v. FCC,* 742 F.2d 629, 639 (D.C.Cir.1984). Despite the necessity for there to be a rational connection between the facts and the decision, the agency's decision need not "be a model of analytic precision to survive a challenge." *Dickson v. Sec. of Defense,* 68 F.3d 1396, 1404 (D.C.Cir.1995). Given the complexity of the Medicare statute and regulations, this Court will give deference to an explanation by the Secretary that may lack the thoroughness desired by Rush so long as there is a reasonable explanation provided. *Appalachian Reg. Healthcare, Inc. v. Shalala,* 131 F.3d 1050, 1054 (D.C.Cir.1997).

In determining that the Intermediary properly treated Rush's request as an initial exception request and that the request was incomplete, the Administrator stated that he reviewed the entire record before him. R. at 5. The Administrator noted that the Intermediary specifically designated Rush's request as an initial exception request in the June 15 letter. *Id.* at 9. Moreover, the Administrator found that despite the Intermediary's detailed descriptions of the deficiencies in Rush's request, Rush raised no objections to the exception designation and did not explain or refute the Intermediary's descriptions. *Id.* The Administrator also found that the information provided by Rush failed to satisfy the PRM requirements. *Id.* Although the Administrator's decision does not precisely state that he found the request incomplete based on his review of the record, the Court finds that the Administrator provided a reasonable explanation of the relevant facts in the record that supported his decision.

### ORDER

For the reasons set forth above, it is this 7th day of February, 2005 hereby

**ORDERED** that the plaintiff's Motion for Summary Judgment [# 15] is **DENIED**, and it is further

**ORDERED** that the defendant's Motion for Summary Judgment [# 17] is **GRANTED.**

**SO ORDERED.**