ST. LUKE'S HOSPITAL, Plaintiff,

v.

Tommy G. THOMPSON, Secretary of Health & Human Services, Defendant.

No. Civ.A. 00CV1884(RBW).

United States District Court, District of Columbia.

Sept. 9, 2002.

Harry R. Silver, Ober, Kaler, Grimes, & Shriver, A Professional Corporation, Washington, DC, for plaintiff.

Paul E. Soeffing, U.S. Department of Health & Human Services, Office of General Counsel, Centers for Medicare and Medicaid Services Division, Baltimore, MD, for defendant.

### MEMORANDUM OPINION

WALTON, District Judge.

In this matter, plaintiff, St. Luke's Hospital ("St.Luke's"), seeks judicial review of the denial by the defendant, the Secretary

of Health and Human Services ("Secretary"), of its application for reimbursement of funds under the Medicare program as a result of plaintiff's request for an exception to its prospectively determined end-stage renal disease ("ESRD") composite rate for the 1993 fiscal year.[1] 42 U.S.C. § 1395rr(b)(7) (2000). The Secretary denied plaintiff's request upon concluding that plaintiff did not demonstrate with "convincing objective evidence" that it qualified for a higher payment as an exception to the prospectively determined ESRD composite rate. Upon consideration of the parties' submissions and for the reasons set forth below, the Court must grant Defendant's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

## I. *Factual & Legislative Background*

The plaintiff is a provider-based ESRD facility located in Bethlehem, Pennsylvania that offers ESRD outpatient dialysis treatment.[2] Compl. at 1–2. As a participator in the Medicare Program, the plaintiff is reimbursed for outpatient maintenance dialysis services[3] by means of a prospectively determined composite rate, which "is a comprehensive payment for all modes of in-facility dialysis and home dialysis . . . [and] is computed on a per treatment basis by adding labor and nonlabor portions, which are adjusted periodically."[4] Def.'s Mot. for Summ.J. ("Def.'s Mot.") at 4–5 (citing Medicare Provider Reimbursement Manual (PRM) § 2702). While Congress sought to regulate the reimbursement of ESRD dialysis services by means of a composite rate, it was careful to include a provision for exceptions of "unusual circumstances", and directed the Secretary to formulate both a method for determining the composite rate and to provide such exceptions as may be warranted. 42 U.S.C. § 1395rr(b)(7). Subsequently, the Secretary promulgated 42 C.F.R. § 413.170 (1993),[5] which provided that the Health Care Financing Administration ("HCFA")[6] may grant an exception to the composite rate if the dialysis provider

> demonstrates with convincing objective evidence that its total per treatment costs are reasonable and allowable under [the relevant cost reimbursement principles of § 413.174], and that its per treatment costs in excess of its payment rate are directly attributable to [one or more specific exception criteria].

(citing End–Stage Renal Disease Program Amendments of 1978, Pub.L. No. 95–292, § 2, 92 Stat. 307, 308–15; Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, § 2145, 95 Stat. 357, 799–800).

1. End–Stage Renal Disease (ESRD) refers to the "stage of renal impairment that appears irreversible and permanent, and requires a regular course of dialysis or kidney transplantation to maintain life." 42 C.F.R. § 405.2102 (2000).

2. Dialysis is "[a] process by which dissolved substances are removed from a patient's body by diffusion from one fluid compartment to another across a semipermeable membrane." 42 C.F.R. § 405.2102

3. "Outpatient maintenance dialysis" means outpatient dialysis, home dialysis, self-dialysis, and home dialysis training. 42 C.F.R. § 413.170(a) (2000).

4. Due to the rapid increase of ESRD expenditures, Congress amended the Medicare statute to limit reimbursement through prospectively determined composite rates. Def.'s Mot. at 3

5. The Court cites, where appropriate, to the 1993 version of the Regulations that were in effect at the time the plaintiff filed its exception request.

6. HCFA (currently known as the Center for Medicare & Medicaid Services ("CMS")) is the agency within the Department of Health & Human Services responsible for administering the Medicare program and publishing the Medicare PRM. Def.'s Mot. at 5 n. 4. The PRM's provisions govern the exceptions process at issue in this case.

This regulation clearly indicates that the provider "is responsible for demonstrating to [the HCFA's] satisfaction that the requirements of this section . . . are met in full. That is, the burden of proof is on the facility to show that one or more of the [exception] criteria are met . . ." *Id.*

On April 28, 1994, the plaintiff submitted a request[7] to its fiscal intermediary,[8] Blue Cross and Blue Shield Association of Western Pennsylvania, seeking an exception from its established ESRD outpatient dialysis composite rate of $127.98, based on an atypical service intensity/patient mix.[9] Compl. at 6; Admin.R. ("A.R.") at 89–90. St. Luke's sought an exception in the amount of $174.41 per dialysis treatment. Def.'s Mot. at 11 (citing A.R. at 89–90). The fiscal intermediary reviewed the plaintiff's request and subsequently submitted it to HCFA with a recommendation that the exception be granted. Compl. at 6; A.R. at 96.

Upon reviewing the plaintiff's request, the HCFA denied the exception because "[w]hile the patient characteristics may indicate an atypical patient mix, [the request contained] inconsistent cost report data . . ."[10] A.R. at 1013. Specifically, the HCFA denied the request because plaintiff failed to explain "(1) a 19% increase in its cost per treatment (CPT) from FY1992 to FY1993, and (2) an inconsistency in St. Luke's documentation supporting its salary costs, which made it impossible to compare FY1993 actual costs with FY1994 projected costs."[11] Def.'s Mot. at 11 (citing A.R. at 1012–13). The HCFA explained that

[i]n accordance with the documentation requirements of section 2725.3E of the Provider Reimbursement Manual, a facility must document any significant in-

---

7. The plaintiff filed this request pursuant to an announcement in October 1993 by the HCFA that providers could apply for exceptions to their ESRD composite rates from November 1, 1993 through April 29, 1994. Def.'s Mot. at 10. Requests for exceptions must be received by the fiscal intermediary within 180 days of: (1) the effective date of the facility's new composite rate; (2) the effective date that the HCFA opens the exceptions process; or (3) the date on which an extraordinary cost-increasing event occurs. Def.'s Mot. at 8 (citing PRM § 2720.2).

8. Private organizations, such as Blue Cross & Blue Shield Association of Western Pennsylvania, act as "fiscal intermediaries" and make payments to providers pursuant to a contractual agreement with the defendant. 42 U.S.C. § 1395h (2000).

9. Specifically, the plaintiff's request listed the following atypical circumstances: 45% of its patients are over the age of seventy, which is higher than the national average of 28%; 64% of its patients are over the age of sixty, which is higher than the national average of 54%; over 32% of its patients have a primary diagnosis of diabetes, which is higher than the national average of 29.53%; over 26% of its patients have a primary diagnosis of glomeru-

lonephritis, which is higher than the national average of 18.5%; and its mortality rate is 19%, which is higher than the national average of 18.2%. A.R. at 1012–13.

10. In submitting a request for an exception, a provider must comply with a specified list that requires that certain information be attached to its request, including its most recent Medicare cost report, to satisfy its burden of demonstrating "convincing objective evidence". Def.'s Mot. at 7–8 (citing 42 C.F.R. § 413.170(f)(6); PRM §§ 2721–22).

11. The inconsistency apparently lies in the fact that in its FY1993 cost report the plaintiff indicated identical hours of service (37,983) for registered nurses ("RNs"), licensed practical nurses ("LPNs"), and technicians. A.R. at 1013. However, for FY1994, the plaintiff indicated that RNs were allocated 23,146 hours, LPNs were allocated 10,334 hours, and technicians were allocated 2,068 hours. *Id.* Apparently, the FY1993 cost report incorrectly stated that such groups of employees individually provided 37,983 hours of service, when in fact they had collectively performed 37,983 hours of service. Compl. at 7.

crease or decreases in budgeted costs and data compared to actual cost and data reported on the latest filed cost report. Since the provider failed to address the significant changes in its CPT as reported for FY 92 and 93, and FY 93 and 94, the provider was unable to relate its higher costs to its claimed atypical patient mix.

The plaintiff timely appealed the HCFA's denial to the Provider Reimbursement Review Board ("PRRB"), which provides for an administrative review of exception denials by the HCFA pursuant to 42 C.F.R. § 413.194 (1993); PRM § 2726. Upon review of the HCFA's findings, the PRRB reversed the exception denial on the basis that the HCFA inappropriately relied upon PRM § 2725.3E and that while the FY1993 numbers contained an obvious error, the HCFA's "review identified the error but did no further review of the obvious error." A.R. at 68. The PRRB found that the HCFA's "lack of appropriate review [was] in violation of [ ] Pub. 15–1 § 2724 which requires [the HCFA] to properly review all information submitted." *Id.*

The HCFA Administrator chose to review and subsequently reversed the decision of the PRRB, finding that the HCFA was unable to properly evaluate St. Luke's exception request because "the Provider failed to document the basis for the significant variance between the projected and prior costs as required by the regulations ..." A.R. at 2–13. Specifically, the Administrator found that the HCFA "did not fail its obligation to review the Provider's application when it questioned the incorrect number of hours reported." *Id.* at 11.

The Administrator reiterated that the plaintiff bears the burden of demonstrating that the exception is warranted, "[t]hat is, the Provider must show that its total costs per treatment are reasonable, and that its costs in excess of its payment rate are directly attributable to its atypical patient mix ... [;] the Administrator finds that [the HCFA] does not have an obligation to perfect a Provider's ESRD exception request." *Id.* at 12. Moreover, the Administrator noted

> that the Provider failed to relate its higher costs to its claimed atypical patient mix ... [as] the Provider does not explain[ ] how the increase in the volume of the treatments results in a higher cost per treatment. While the Provider's salary cost may increase to service the higher volume, the higher salary costs does not mean that there are higher cost per treatment ... The Provider must show that its increased costs are due to its atypical patient mix as opposed to other excess costs.

*Id.* at 11. Finally, the Administrator commented that the plaintiff submitted its request on the last day of the 180–day filing period for exception requests, making "it impossible for the Intermediary to request additional information which could be submitted timely." *Id.* at 12.

The plaintiff subsequently filed this cause of action seeking judicial review of the HCFA Administrator's decision.[12]

## II. *Standard of Review*

It is well understood that this Court will review an agency's decision pursuant to the Administrative Procedure Act, 5 U.S.C. § 706 (2000) ("APA"), and that this Court may only set aside agency actions,

---

12. The HCFA Administrator's decision represents the final administrative decision of the Secretary. *See* 42 U.S.C. § 1395oo(f)(1) (2000); 42 C.F.R. § 405.1875 (2000); *Methodist Hosp. of Sacramento v. Shalala,* 38 F.3d 1225, 1229 n. 5 (D.C.Cir.1994) ("The Deputy Administrator's decision constitutes the final agency action ...") (citing *St. Mary of Nazareth Hosp. v. Schweiker,* 718 F.2d 459, 466 (D.C.Cir.1983)).

findings, and conclusions that are found to be in violation of 5 U.S.C. § 706(2). *See* 42 U.S.C. § 1395oo(f)(1) (2000) (incorporates judicial review provisions of the APA in review of a final decision by the Secretary); *Mem'l Hosp./Adair County Health Ctr., Inc. v. Bowen,* 829 F.2d 111, 116 (D.C.Cir.1987). Thus, the scope of the Court's review is solely to determine whether the Secretary's decision to deny the plaintiff's request for an exception to the ESRD composite rate was arbitrary, capricious, an abuse of discretion, contrary to law or regulations, or unsupported by substantial evidence. 5 U.S.C. § 706(2).[13] It is clear in this Circuit that the "arbitrary and capricious" and "substantial evidence" standards "require equivalent levels of scrutiny." *Adair County,* 829 F.2d at 117. The District of Columbia Circuit explained that

> [w]hile the substantial evidence test concerns support in the record for the agency action under review, the arbitrary and capricious standard is a broader test subsuming the substantial evidence test but also encompassing adherence to agency precedent. Thus the substantial evidence test is that aspect of the arbitrary and capricious test usually applied to review of agency adjudications, but its use does not connote stricter scrutiny of agency action.

*Id.; see Sithe/Independence Power Partners v. FERC,* 285 F.3d 1, 5 n. 2 (D.C.Cir. 2002) ("APA's substantial evidence inquiry . . . is a subset of the APA's arbitrary and capricious standard."). An agency's interpretation of its own regulations is generally to be afforded "substantial deference", "unless it is plainly erroneous or inconsistent with the regulation." *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994) (citations omitted). The Supreme Court has stated that such "deference is all the more warranted when, as here, the regulation concerns 'a complex and highly technical regulatory program,' in which the identification and classification of relevant 'criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns.'" *Id.* (discussing the deference to be given to the Secretary's interpretation of a Medicare regulation) (quoting *Pauley v. BethEnergy Mines, Inc.,* 501 U.S. 680, 697, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991)).

For agency adjudications, the "substantial evidence" test applies to this Court's review of the Secretary's decision to deny the plaintiff's exception request and requires the Court to access whether there is "such relevant evidence [in the administrative record] as a reasonable mind might accept as adequate to support a conclusion." *Consolo v. Fed. Maritime Comm'n,* 383 U.S. 607, 619–20, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see Adair County,* 829 F.2d at 117 (explaining that "the substantial evidence test is that aspect of the arbitrary and capricious test usually applied to review of agency adjudi-

---

**13.** 5 U.S.C. § 706(2) states that "[t]he reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be—
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(B) contrary to constitutional right, power, privilege, or immunity;
(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;
(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court."

cations."). Under this deferential standard of review, the decision of the Secretary must be affirmed.

### III. *Analysis*

The Court must address the plaintiff's challenge to the Secretary's actions from the perspective of asking whether the record contains "convincing objective evidence" from which the Secretary should have found "special circumstances", *i.e.*, an atypical patient mix, that warranted an exception from the congressionally mandated Medicare ESRD composite rates. *See* 42 U.S.C. § 1395rr(b)(7); 42 C.F.R. § 413.170(g). While there is no dispute that the plaintiff's exception request contains the necessary documents that must be submitted along with the request as required by 42 C.F.R. § 413.170(f)(6)(i)– (iv); PRM §§ 2721–22, the Court must address: (1) whether the agency's decision to deny the exception request is supported by adequate relevant evidence, *see Consolo*, 383 U.S. at 619–20, 86 S.Ct. 1018 (quoting *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206), on the question of whether the provider's cost report failed to demonstrate "convincing objective evidence" that its costs in excess of the pre-established ESRD composite rate were justifiable, *see* A.R. at 10–13; and (2) whether the agency inappropriately applied Section 2724 of the PRM in denying plaintiff's exception request.

### (1) *The Secretary's Decision to Deny the Plaintiff's ESRD Exception Request*

In reviewing the Secretary's decision to deny the plaintiff's exception request, the Court must examine whether it was proper to deny this request because the provider: (A) purportedly failed to address why there was a nineteen percent increase in its per treatment cost for hemodialysis maintenance of patients, and (B) failed to submit a cost report with correct numbers regarding its employees hours of service.

### (A) *The Secretary's Decision that Provider Failed to Explain Increase in Cost Per Treatment*

The Secretary found that the "Provider failed to relate its higher costs to its claimed atypical patient mix." A.R. at 11. While the plaintiff's request states that there is an "increase in treatment costs [as] a result of the continuing increase in staffing required to care for our acutely-ill patients and the related salary expense", A.R. at 95, the Secretary noted that "the Provider failed to relate its higher costs to its claimed atypical patient mix." A.R. at 11. Specifically, the Secretary found in relation to the provider's assertion that there was an increase in the volume of treatments, that the

> the Provider does not explain[ ] how the increase in the volume of the treatments results in a higher cost per treatment. While the Provider's salary cost may increase to service the higher volume, the higher salary costs does not mean that there are higher cost[s] per treatment. Generally, it is low volume which correlates to a higher cost per treatment, not higher volume.

A.R. at 11. The Secretary also addressed the Provider's contention that its higher costs were attributable to higher wages it was paying its employees. The Secretary also rejected this claim because the predetermined composite rate applicable to the provider "has been adjusted to a certain extent to recognize higher wage costs in the area in which the facility is located." *Id.* According to the Secretary, the mere fact that plaintiff hired more employees to deal with the increased volume of its atypical patients provides evidence that its *overall* costs increased, but it does not

provide evidence that its *per-treatment* cost increased. *Id.*

■ The plaintiff asserts that it "did not merely state it needed more staff, [but] provided detailed support and analysis for the additional staffing it anticipated needing based on its historic and future anticipated atypical patients." Def.'s Mot. at 16. As support for this position, the plaintiff points to Exhibit P of its exception request, which it contends "segregated its costs into three direct cost categories and seven overhead categories in order to fully examine the differences in these cost categories from FY 1990 through FY 1995." *Id.; see* A.R. at 461. However, the Court must agree with the Secretary that this exhibit does not provide any analysis or explanation regarding how or why the increase of costs occurred. Def.'s Reply at 2. Exhibit P, which provides cost analysis of FY 1990–1993 and budget estimates for FY 1994–1995, including total salary costs, A.R. at 461, not only fails to specify salary costs by type of employee, but also contains a different salary cost for FY 1993 than the amount listed in Exhibit B (provides breakdown of salaries for each RN, LPN, and technician for FY 1991–1993), A.R. at 103, and Exhibit C (provides Renal Dialysis Unit Staff comparison of salaries for FY 1991–1993 and projected salary costs for FY 1994–1996), A.R. at 105.[14] *Id.* at 2–3 n. 1. This surely fails to meet the plaintiffs obligation to present a sufficient explanation or analysis regarding the increase in salaries in relationship to its purported atypical patient mix. Accordingly, the plaintiffs application for the exemption precluded the agency from having the ability to determine whether the provider met the atypical service intensity exception.

### (B) *The Secretary's Position that Provider Failed to Submit an Accurate Cost Report*

As discussed above, the plaintiff incorrectly reported the number of hours worked by its employees (RNs, LPNs, and technicians) on its FY 1993 cost report. *Supra* at p. 4 and n. 11. While the plaintiff does not dispute that it submitted an inaccurate FY 1993 cost report, it nonetheless claims that the mistake was an "obvious error" and that the correct service hours for FY 1993 were "reported and fully documented elsewhere in the pertinent sections of the request." Plaintiffs Memorandum of Points & Authorities in Support of Its Motion for Summary Judgment ("Pl.'s Mem.") at 17–18. The plaintiff comes to this conclusion by asserting that the agency could have extrapolated the relevant information from Exhibit C of its exception request, which listed the full-time equivalents ("FTEs")[15] for each employee type. However, as the plaintiff candidly acknowledges, even if the agency had undertaken the task of multiplying the FTEs in Exhibit C by its equivalent number of hours in an attempt to achieve accurate FY 1993 cost report figures, this calculation would have still resulted in a discrepancy of 2000 hours.[16] Pl.'s Mem. at 19. The Court agrees with the observation that "[t]he discrepancy provides the

14. Exhibit P lists the salary figure as $665,608; Exhibit B lists the figure as $660,234; and Exhibit C lists the figure as $658,963.

15. The Secretary has adopted the standard that 1 FTE is equivalent to 2,080 hours. Pl.'s Mem. at 19 n. 4 (citing 62 Fed.Reg. 24,483–4 (May 5, 1997)).

16. The plaintiff minimizes the significance of this discrepancy, stating that "a 2000 difference in hours, which is equivalent to one FTE, is not a significant difference that would need to be explained." *Id.*

requisite level of record evidence supporting the Secretary's decision by demonstrating that even substituting other available documentation did not yield figures that were accurate enough for HCFA to use in evaluating St. Luke's exception request." Def.'s Mot. at 21. The error committed by the plaintiff was significant because, as the HCFA observed in their denial letter to the plaintiff, the data that contained the error was critical to determine the total direct service hours, average hours per treatment, and the unit cost multiplier, all of which were used to determine the adequacy of the request for the exception. A.R. at 1013. While the plaintiff offers as the reason for the discrepancy the fact that the FTEs were "rounded," [17] Pl.'s Mem. at 19, the fact that this had been done was not provided to the HCFA. More importantly, it is not incumbent upon the HCFA to determine the source of the discrepancy, and then resolve it; rather "[t]he burden of proof is on the facility to show that one or more of the criteria are met." 42 C.F.R. § 413.170(f)(5). On the record here, the Court must accept the Secretary's conclusion that this burden has not been satisfied.

### (2) *The HCFA's Interpretation of the Applicable PRM Regulations*

Plaintiff also contends that in two respects the HCFA inappropriately relied on an error of law in its application of the Medicare Provider Reimbursement Manual. Pl.'s Mem. at 27. First, plaintiff contends that Section 2724 of the PRM requires the HCFA to review all information submitted by a provider with its ESRD exception request.[18] Pl.'s Mem. at 27 (cit-

ing A.R. at 792). While the plaintiff is correct that "[a]n agency is required to abide by its own rules as established in the agency's manuals," *id.* citing *Massachusetts Fair Share v. Law Enforcement Assistance,* 758 F.2d 708, 711 (D.C.Cir.1985), *cited with approval in, Chiron Corp. v. NTSB,* 198 F.3d 935, 944 (D.C.Cir.1999), the Court is unwilling to conclude that the agency's duty to review all information submitted by a provider with its exception request requires that it also undertake additional efforts to extrapolate from this information and data contained throughout a voluminous exception request. As discussed above, the burden to submit "convincing objective evidence" establishing that it qualifies for an exception pursuant to 42 C.F.R. § 413.170(g) always remains with the provider. The Court is unable to conclude that the agency, when faced with an exception request that contains erroneous information, has an affirmative duty to not only identify the error but also to determine what the correct information should be.

The proper response by an agency, assuming that it can determine that a provider has submitted incorrect or incomplete documentation, is provided for in PRM § 2723 ("When the renal facility fails to submit the required documentation (see § 2721), the exception request is returned to the facility."). In *Mercy Hospital of Miami, Inc. v. Shalala,* Civ. A. No. 91–3268, 1993 WL 475517 (D.D.C. Sept. 13, 1993), the Secretary had denied a provider's exception request for atypical patient mix based on a discrepancy in submitted cost figures and the lack of an adequate explanation about the connection between these figures and the asserted atypical pa-

---

**17.** The plaintiff provides no further explanation for this discrepancy other than the FTE's were "rounded." Pl.'s Mem. at 19.

**18.** PRM Section 2724 provides, in part, that "Upon receipt of the exception request infor-

mation from the intermediary, HCFA: Reviews all the information submitted; Prepares a decision based on the documentation submitted and advises the intermediary of the decision or the status of HCFA's review ..."

tient mix. The Court in *Mercy Hospital* found that

[o]nce HCFA has exercised its discretion in determining that information above and beyond that which is required under § 2721 would be needed to support an exception request, HCFA should at a minimum notify providers and give them an opportunity to supply the additional documentation. Adequate notice and opportunity to comply is the hallmark of administrative fairness.

*Id.* The *Mercy Hospital* Court concluded that the HCFA, like a fiscal intermediary, "bears an affirmative duty to request additional information from providers seeking dialysis exception requests when such information is deemed necessary to make the requests approvable." 1993 WL 475517, at *9. However, the plaintiffs decision to wait until the day prior to the expiration of the 180–day exception period effectively absolved the HCFA from this affirmative duty because it was not given an opportunity to review the submission and access whether additional information was needed before the window of opportunity for seeking an exception closed. This Court must agree with the Court's decision in *Mercy Hospital* that "the closing of the exception window should represent the absolute latest by which a provider can make whole a defective exception request." *Id.* This is so because Congress has mandated that an exception request "shall be deemed to be approved unless the Secretary disapproves it by not later than 60 working days after the date the application is filed." 42 U.S.C. § 1395rr(b)(7). The *Mercy Hospital* Court declined to adopt the hospital's position that this sixty-day period does not begin to run until "an exception request is deemed complete by the HCFA", and that until that occurs the "HCFA is required to continually request additional information" from the applicant. *Id.* at *8. The Court reached this conclusion because the hospital's position would eviscerate "the statuto-

rily mandated time limitation" objective of "ensur[ing] an expeditious review process ...." *Id.* at *9. Thus, the *Mercy Hospital* Court concluded that

the closing of the exception window should represent the absolute latest by which a provider can make whole a defective exception request. An intermediary and HCFA will have to carry their respective duties in requesting additional information up to the closing of the window. Upon closing, however, an intermediary will review whatever documentation a provider has submitted and make a recommendation thereon; it need not request additional documentation even if the exception request would otherwise be deemed incomplete. The same applies to HCFA. If a provider fails to avail itself of the extensive period of time during which it can file a request, HCFA's corresponding duty to request additional information is discharged upon the closing of the window ... This construction necessarily implies that the earlier a provider submits its request, the more time and opportunity it would have to cure an otherwise defective request. A procrastinating provider who submits its request only toward the end of the period, on the other hand, would deprive itself of the opportunity to make whole a deficient request.

*Id.* Here, the plaintiff waited until the day prior to the close of the filing period for seeking an ESRD exception. A.R. at 996. Therefore, upon the closing of the exception window the following day, the plaintiff was unable to supplement additional documentation in support of its exception request. Thus, the Court cannot take exception with the Secretary's observation that the "[p]laintiff is responsible for its own predicament." Def.'s Mot. at 25.

 The Court is compelled to find that the plaintiff received everything it was entitled to by way of review of its application

for the exception. The Secretary undertook a thorough review, noting that "[t]he entire record furnished by the Board has been examined, including all correspondence, position papers, exhibits, and subsequent submissions. All comments received timely are included in the record and have been considered." A.R. at 5. The Court is therefore satisfied that under these particular circumstances the agency adequately considered the exception material submitted to it.

The plaintiff also contends that the HCFA erred in denying its request because "the only legal authority cited . . . [as grounds for denying the] exception request was PRM § 2725.3E," Pl.'s Mem. at 28 (citing A.R. at 868), which it correctly points out is not applicable to the circumstances of this case. However, the defendant recognized that it committed a typographical error in this regard, *see* A.R. at 49, as § 2725.3 only applies to the "isolated essential facility" exception. It is evident from the record that the plaintiff was claiming an exception based upon atypical service intensity and the HCFA clearly based its decision on this exception and not the isolated essential facility exception of § 2725.3E of the PRM. *See* A.R. at 1012–14 (the HCFA's denial letter only discusses the atypical service intensity exception request). The Court does not see how this typographical error transforms the plaintiffs deficient request into something else or affects the HCFA's reasoning behind its denial of the plaintiffs request, when the denial and the reasons set forth were clearly in response to an exception request based on atypical service intensity.

### IV. *Conclusion*

Because this Court finds that the Secretary's denial of the plaintiffs exception request is not unsupported by substantial evidence, and the Secretary's application of

its regulation concerning the HCFA's responsibilities in reviewing exception requests was not arbitrary, capricious, or contrary to law, this Court must grant the defendant's motion for summary judgment and deny the plaintiffs motion for summary judgment.[19]

### *ORDER*

Upon consideration of the parties' summary judgment motions, and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is hereby,

**ORDERED** that the defendants motion for summary judgment is **GRANTED;** and it is

**FURTHER ORDERED** that the plaintiffs motion for summary judgment is **DENIED;** and it is

**FURTHER ORDERED** that this case shall be **DISMISSED WITH PREJUDICE.**

---

19. An Order consistent with the Court's ruling accompanies this Memorandum Opinion.