Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued December 5, 2003      Decided January 30, 2004

No. 02-5350

ST. LUKE'S HOSPITAL,
APPELLANT

v.

TOMMY G. THOMPSON,
SECRETARY OF HEALTH AND HUMAN SERVICES,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 00cv01884)

———

*Leslie Demaree Goldsmith* argued the cause for appellant. With her on the briefs was *Harry R. Silver*.

*Paul E. Soeffing*, Attorney, U.S. Department of Health and Human Services, argued the cause for appellee. With him on the brief were *Peter D. Keisler*, Assistant Attorney General; *Roscoe C. Howard Jr.*, U.S. Attorney; *Anthony J. Stein-*

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*meyer*, Attorney, U.S. Department of Justice; *Alex M. Azar II*, General Counsel, U.S. Department of Health and Human Services; *Robert P. Jaye*, Acting Associate General Counsel; and *Henry R. Goldberg*, Deputy Associate General Counsel for Litigation.

Before: SENTELLE, ROGERS, and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: A Pennsylvania hospital that treats patients with renal disease asked the Secretary of Health and Human Services to increase the rate at which the Medicare program would reimburse it for each treatment. After discovering an error in the hospital's supporting documentation, the Secretary denied the request, and the district court rejected the hospital's challenge to that ruling. Finding the Secretary's conclusion that the error left the hospital unable to carry its burden of justifying a rate increase neither arbitrary nor capricious, we affirm.

## I.

Each year, the Secretary of Health and Human Services establishes a prospective "composite rate" for various outpatient treatments of end-stage renal disease (ESRD). *See* 48 Fed. Reg. 21,254 (May 11, 1983); *see also* 42 U.S.C. § 1395rr(b) (2000) (requiring such action by the Secretary). The composite rate, which represents the approximate per-treatment cost that the Secretary expects health-care providers to incur for various ESRD treatments, encourages efficiency, for if a provider's per-treatment cost falls below the composite rate, then the difference represents a profit to the provider. At the same time, the composite rate does not establish an absolute ceiling; providers that experience per-treatment costs above the composite rate may ask the Secretary for an "exception." 42 U.S.C. § 1395rr(b)(7). A provider seeking an exception must "demonstrate[ ] with convincing objective evidence that its total per treatment costs are reasonable and allowable . . ., and that its per treatment costs in excess of its payment rate are directly attributable to any

of the [listed] criteria." 42 C.F.R. § 413.170(g) (1993). "Atypical service intensity (patient mix)" tops the list of criteria. *Id.*

Pursuant to HHS's Provider Reimbursement Manual (PRM)—"a compilation of interpretive rules published by [HHS]," Appellee's Br. at 5 n.5—providers must submit exception requests during 180–day periods that the Secretary designates from time to time (or within 180 days of other events not relevant here). PRM § 2720.2 (1993). Providers submit requests to their "fiscal intermediaries," i.e., private organizations such as insurance companies. *Id.* § 2720. Intermediaries have fifteen working days to review requests and forward them to HHS with their recommendations. *Id.* § 2723. The HHS division responsible for initially reviewing exception requests, the Centers for Medicare & Medicaid Services (CMS), has sixty working days in which to deny requests, or they are automatically approved. 42 U.S.C. § 1395rr(b)(7). Because this sixty-day period includes the fifteen days that intermediaries have to review applications, CMS actually has only forty-five working days in which to complete its review.

Located in Bethlehem, Pennsylvania, appellant St. Luke's Hospital applied for an exception to the prevailing ESRD composite rate, seeking reimbursement at a rate of $174.41 per treatment—$46.43 above the composite rate of $127.98. St. Luke's based its request on its asserted "atypical service intensity," claiming that it had to spend an abnormally high amount of money on staff salaries because the population it served was both atypically old and unusually likely to suffer from acute conditions requiring intensive treatment. St. Luke's submitted its request on the last day of the relevant 180–day period.

After reviewing the hospital's request, the fiscal intermediary forwarded it to CMS with a recommendation that it be approved. CMS denied the request, however, citing two problems: (1) St. Luke's failed to explain why its per-treatment cost for hemodialysis maintenance increased nineteen percent between 1992 and 1993, and (2) it provided no

explanation for why the number of hours that its nurses and technicians worked tripled between 1993 and 1994. Because of these deficiencies, CMS concluded that St. Luke's failed to present, as HHS regulations require, "convincing objective evidence" showing not only that it met the listed criterion (atypical patient mix), but also that this atypical mix caused the hospital's unusually high per-treatment costs. *See* 42 C.F.R. § 413.170(g).

St. Luke's appealed CMS's denial to the Provider Reimbursement Review Board (PRRB), the HHS division responsible for reviewing CMS decisions. *See* 42 U.S.C. § 1395oo(a) (2000). Reversing CMS's denial and granting the hospital's requested exception, the PRRB ruled first that CMS had improperly cited PRM section 2725.3E, which applies only when a facility seeks an exception based on its status as an "isolated essential facility." St. Luke's made no claim to be such a facility. As to the tripling of nurse and technician hours, the PRRB stated that the hospital's request contained an "obvious" error: for each of three categories of workers—registered nurses, licensed practical nurses, and technicians—St. Luke's reported the combined number of hours for all three categories. Although the three groups of workers actually worked a combined total of 37,983 hours during the relevant year, St. Luke's gave that number for each category, making the total for the three categories appear three times the actual figure and roughly three times what it had been in other years. The PRRB concluded that because the correct data appeared elsewhere in the hospital's 690–page request and were thus available to CMS, the agency erred in failing to conduct "further review of the obvious error." *St. Luke's Hosp. v. Blue Cross & Blue Shield Ass'n*, PRRB Hearing Dec. No. 2000–D42, [2001–1 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶ 80,432, at 14 (Apr. 4, 2000), *reprinted in* J.A. A70, A83. CMS must, the PRRB stated, "properly review all information submitted. Observance of an obvious error and not responding to it is patently wrong and unfair to this Provider." *Id.*

The CMS Administrator, pursuant to statutory authority, *see* 42 U.S.C. § 1395oo(f)(1), decided on his own motion to

review the PRRB's decision, which he reversed. According to the Administrator, even if CMS had conducted further review of the hospital's "obvious" error, it would have been unable to resolve the problem because contrary to the PRRB's contention, the hospital's exception request nowhere contained the correct number of total hours. The request contained only the total number of nurses and technicians. Although St. Luke's suggested that CMS could have obtained the hourly figures by multiplying the employee totals by 2080—the number of hours that HHS regulations assume full-time employees work per year—the Administrator pointed out that even if CMS had done this extra work, there would have been an unexplained discrepancy of approximately 2000 hours between the 1993 figures and the projected 1994 figures. In any event, the Administrator ruled, CMS has no duty to perfect exception requests. HHS regulations "make unequivocally clear that the Provider bears the burden of proving to [CMS's] satisfaction" that it deserves an exception. *St. Luke's Hosp. v. Blue Cross & Blue Shield Ass'n*, HCFA Adm'r Dec., [2000–2 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶ 80,534, at 11 (June 2, 2002), *reprinted in* J.A. A27. The Administrator also pointed out that although CMS normally would have given St. Luke's a chance to submit additional information, it did not do so because the hospital submitted its exception request on the last day of the 180–day window, meaning that it could not have provided additional data before the window closed. *Id.*; *see also* PRM § 2723.3A (stating that a request for supplemental information does not extend the original 180–day window).

St. Luke's challenged the Administrator's decision, which represented the Secretary's final determination, in the United States District Court for the District of Columbia. *See* 42 U.S.C. § 1395oo(f)(1) (providing for such review). Granting summary judgment for the Secretary, the district court analyzed the case much as the CMS Administrator had, although unlike the Administrator the court addressed CMS's improper reliance on the PRM section that applies only to isolated-facility exceptions. Deeming the citation to this section a "typographical error," the court concluded that it did not

"transform[ ] the plaintiff[']s deficient request into something else." *St. Luke's Hosp. v. Thompson*, 224 F. Supp. 2d 1, 10 (D.D.C. 2002).

St. Luke's now appeals. "Because the district court entered a summary judgment, we review its decision de novo and therefore, in effect, review directly the decision of the Secretary." *Lozowski v. Mineta*, 292 F.3d 840, 845 (D.C. Cir. 2002). Employing familiar APA standards, we will set aside the Secretary's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2000); *see also* 42 U.S.C. § 1395oo(f)(1) (providing that the APA standard applies in cases involving denials of exception requests).

## II.

We begin with the error in the hospital's exception request. As noted above, the request incorrectly stated that each of three groups—the hospital's registered nurses, licensed practical nurses, and technicians—worked 37,983 hours, for a total of 113,949 hours. In fact, the three groups worked a combined 37,983 hours; St. Luke's accidentally listed the three-group total for each group. CMS rejected the hospital's request because, among other things, the error left it unable "to properly evaluate the provider's request for the additional salary costs."

According to St. Luke's, the error could not provide a basis for denying the exception request because it had no effect on CMS's analysis. Not so, responds the Secretary: the incorrect data "affected subsequent calculations for total direct service hours, average direct service hours per treatment, and unit cost multipliers for FY 1993. These calculations are made to determine if a facility qualifies for an exception." Appellee's Br. at 28 (citation omitted). Not only did St. Luke's fail to challenge this response in the district court, which accepted the explanation, but it makes no reply to it here. In any event, we think it perfectly reasonable for the Secretary to require accurate staffing information from St.

Luke's given that the hospital's exception request rested partly on high staffing costs.

St. Luke's next argues that even if the error had significance, it did not justify CMS's rejection of the exception request because the error was clear and the correct data appeared elsewhere in the request. By failing to find that data, St. Luke's insists, CMS violated its PRM section 2724 obligation to review "all the information submitted." Again, the Secretary disagrees. Correcting the error, he argues, would have required much more than simply substituting hourly figures that appeared elsewhere in the request. According to the Secretary, fixing the mistake would have required several steps. To begin with, CMS would have had to recognize the error, something that the Secretary says was harder than St. Luke's believes. Although St. Luke's insists the error was "obvious," the hospital, as the Secretary points out, alerted neither the fiscal intermediary nor CMS to the error at any time prior to CMS's denial. The Secretary also contends that even if CMS had recognized the error, it would have had to find the correct employee figures elsewhere in the exception request, verify their accuracy, and then multiply the employee numbers by 2080 to obtain a total-hours figure. Given the volume of requests that CMS must process, each in only forty-five days, the Secretary argues that it would be unreasonable to expect CMS to do this work for the provider.

Resolution of this issue turns on what CMS can reasonably be expected to do when exception requests contain some sort of error. For three reasons, we agree with the Secretary that, under the circumstances of this case, CMS had no obligation to correct the hospital's error.

First, HHS regulations, unchallenged by St. Luke's, place the burden on the provider to adduce "convincing objective evidence" that it merits an exception. 42 C.F.R. § 413.170(g). St. Luke's has not explained how requiring CMS to discern and then correct providers' errors is consistent with this burden of proof, or how evidence that is wrong could possibly be "convincing." Nor do we understand how we would

distinguish between errors that are obvious and those that are not. Asked for some guidance at oral argument, counsel was unable to suggest any principled basis for drawing such distinctions.

Second, even if CMS had done the work that St. Luke's insists it should have, it still would have faced a 2000–hour, or five percent, discrepancy between the 1993 figures and the projected figures for 1994. Although the district court relied on this discrepancy in granting summary judgment for the Secretary, St. Luke's failed to address the issue in this court until its reply brief, at which point it says only that the discrepancy may have represented the hospital's plan to hire one additional employee in the coming year. Yet St. Luke's did not offer this explanation (or any other) to CMS, meaning that even if CMS had done the work that St. Luke's says it should have, the agency still would have faced a significant unexplained discrepancy. In other words, St. Luke's argues not that CMS should have ignored obviously wrong data in favor of accurate information, but that the agency should have ignored obviously wrong data in favor of seemingly "less wrong" information that it could have calculated from the data it had. We find this argument unpersuasive.

Third, St. Luke's failed to submit its exception request until the very last day of the 180–day window, leaving no time for CMS to request additional data. *See* PRM § 2723.3A (noting that incomplete exception requests are returned to providers with a letter stating that "[o]ur returning your exception request does not extend the deadline by which you must submit an exception request with all the required documentation"). Defending its last-minute submission, St. Luke's simply repeats—untenably given its burden of proof—that its exception request contained all required information. St. Luke's also argues that it submitted its request so late because the Secretary failed to provide adequate advance notice of the 180–day window. Because St. Luke's (again waiting until the last minute) advances this argument only in its reply brief, "we will not consider it." *A.J. McNulty & Co. v. Sec'y of Labor*, 283 F.3d 328, 338 (D.C. Cir. 2002). Finally, St. Luke's tells us that exception requests are complex, that

its request "clearly could not be properly compiled and submitted within weeks," and that in fact "it took St. Luke's months to prepare a comprehensive request." Appellant's Reply Br. at 16. But none of this explains the hospital's decision to wait until the 180th day. Had St. Luke's taken even three months to compile and submit its exception request, CMS would have had to complete its review a full month before the 180–day window closed, giving St. Luke's plenty of time to submit whatever additional data CMS wanted. By waiting until the last day, St. Luke's essentially gambled that its exception request would be error-free. Having gambled and lost, it may not now shift the blame to CMS.

The hospital's remaining arguments require little discussion. It contends that CMS violated the agency's PRM section 2724 duty to review "all the information submitted." In support of this argument, St. Luke's points only to the fact that CMS denied the request. As we have explained, that denial hardly shows a lack of thorough review, since even a thorough review of "all the information submitted" would have yielded an unexplained 2000–hour discrepancy—a discrepancy that by itself would have justified rejecting the exception request.

Next, St. Luke's argues that because the error appeared in a document that it had previously filed with HHS, it would have had to alter the document in order to correct the mistake. As the Secretary points out, however, a procedure exists for situations precisely like this one, allowing for the filing of amended cost reports. "Not only did St. Luke's fail to avail itself of this procedure, it also neglected to explain or even bring the error to CMS's attention in its exception request." Appellee's Br. at 28 n.16.

Nor do we see anything in the Secretary's decision that conflicts with *Christ Hospital v. Blue Cross & Blue Shield Ass'n*, HCFA Adm'r Dec., [2000–12 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶ 80,416 (Feb. 11, 2000), *reprinted in* Appellant's Br. at addendum 10. There, CMS,

then known as the Health Care Financing Administration (HCFA), denied an exception request on the ground that certain data were missing, stating that "[w]e did not recompute the percentages for the patient characteristics . . . since it is not HCFA's responsibility to summarize the patient data to make them meaningful." *Id.*, *reprinted in* Appellant's Br. at addendum 13. The Administrator reversed and remanded, but not—as St. Luke's suggests—on the ground that HCFA should itself have undertaken any calculations. Rather, the Administrator remanded because the supposedly missing data were not in fact missing. "The Administrator finds and the record reflects that the [data] were included in the Provider's ESRD exception request package. Therefore, the Administrator remands this case to afford HCFA the opportunity to examine the data that the Provider furnished . . . ." *Id.* Since here the correct hourly figures were in fact unavailable, *Christ Hospital* provides no support for the hospital's charge of inconsistency.

Finally, St. Luke's contends that given the district court's willingness to excuse CMS's erroneous reliance on PRM section 2725.3E, the hospital's mistake should also be excused. Like the district court, we disagree. While both errors may have been "typographical," the errors were very different. The hospital's error went to the heart of its case, leaving it unable to carry its burden of presenting "convincing objective evidence." CMS simply made an error about the proper legal basis for an otherwise unassailable decision. Because CMS's error "had no bearing on the procedure used or the substance of the decision reached," *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248 (1964), it provides no basis for vacating the Secretary's decision.

## III.

Having found nothing arbitrary or capricious in the Secretary's decision to reject the hospital's exception request on the ground that it contained a material error, we need not consider St. Luke's challenge to CMS's other ground for

denying the request—the unexplained nineteen percent increase in the hospital's costs for one type of treatment.

The district court's judgment is affirmed.

*So ordered.*