Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued October 14, 2003      Decided March 19, 2004

No. 02-1307

S.A. STORER AND SONS CO.,
PETITIONER

v.

SECRETARY OF LABOR,
RESPONDENT

————

On Petition for Review of an Order of the
Occupational Safety and Health Review Commission

————

*Roger L. Sabo* argued the cause for the petitioner.

*John Shortall*, Attorney, United States Department of Labor, argued the cause for the respondent. *Joseph M. Woodward*, Associate Solicitor, and *Ann S. Rosenthal*, Counsel, United States Department of Labor were on brief. *Charles F. James*, Attorney, United States Department of Labor, entered an appearance.

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before:  HENDERSON, TATEL and ROBERTS, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*:  S.A. Storer and Sons Co. (Storer) petitions for review of the citation it received from the Occupational Safety and Health Administration (OSHA), alleging that it had violated the Occupational Safety and Health Act of 1970 (OSH Act or Act)[1] by failing to protect its employees from two fall hazards as they performed masonry work.  Storer contested the citation, which required the Secretary of the United States Department of Labor (Secretary), from whom OSHA receives its rulemaking and enforcement authority, to prove the violation at a hearing before an Administrative Law Judge (ALJ) of the Occupational Safety and Health Review Commission (Commission).[2] The citation was affirmed by the ALJ and ultimately by the Commission, which denied review of the ALJ's decision. Storer claims the Secretary erroneously interpreted the applicable OSHA regulations.  We agree in part;  accordingly, we vacate the Commission's order and remand to that body for further proceedings consistent with this opinion.

## I.

The OSH Act is "designed 'to assure so far as possible . . . safe and healthful working conditions' for 'every working man and woman in the Nation,'"[3] and generally obligates an employer to furnish a workplace "free from recognized hazards that are . . . likely to cause death or serious physical harm."  29 U.S.C. § 654(a)(1).  In furtherance of the Act's overriding objective, the Secretary is authorized to promulgate and enforce workplace safety regulations, *see id.* §§ 655(b), 658–59, 666, which authority she has largely dele-

---

[1] 29 U.S.C. §§ 651 *et seq.*

[2] *Am. Wrecking Corp. v. Sec'y of Labor*, 351 F.3d 1254, 1261 (D.C. Cir. 2003).

[3] *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 147 (1991) (quoting 29 U.S.C. § 651(b)); *see also Am. Wrecking Corp.*, 351 F.3d at 1260.

gated to OSHA. *A.J. McNulty & Co. v. Sec'y of Labor*, 283 F.3d 328, 330 (D.C. Cir. 2002) (citing 65 Fed. Reg. 50,017 (2000)); *see also Am. Wrecking Corp. v. Sec'y of Labor*, 351 F.3d 1254, 1260 (D.C. Cir. 2003). OSHA compliance officers inspect workplaces regularly and, if warranted, issue citations for violations of OSHA's regulations. *A.J. McNulty & Co.*, 283 F.3d at 330.

At issue are OSHA's regulations designed to provide fall protection for construction workers, *see* 29 C.F.R. §§ 1926.451, 1926.501; specifically, the protective measures required when an employee performs "overhand bricklaying"[4] while on a scaffold. *Id.* § 1926.451(g)(1)(vi). Paragraph (g)(1) of section 1926.451 provides that "[e]ach employee on a scaffold more than 10 feet (3.1 m) above a lower level shall be protected from falling to that lower level." *Id.* § 1926.451(g)(1). Section 1926.451(g)(1)(vi) requires that an employee doing overhand bricklaying "from a supported scaffold shall be protected from falling from all open sides and ends of the scaffold (except at the side next to the wall being laid) by the use of a personal fall arrest system or guardrail system." *Id.* § 1926.451(g)(1)(vi). The meaning of the exception is the central issue in this case, as becomes clearer below.

Storer is a masonry contractor operating in Ohio and Michigan. It has been doing business for over 40 years and currently has approximately 80 to 90 employees on its payroll. In May 2001 Storer was hired by Bostleman Corporation (the general contractor) to perform the masonry work for the construction of a Farmer Jack's grocery store, located at the corner of Cherry and Bancroft Streets in Toledo, Ohio. Four masons and three mason tenders carried out the work, which

---

[4] "Overhand bricklaying" is "the process of laying bricks and masonry units such that the surface of the wall to be jointed is on the opposite side of the wall from the mason, requiring the mason to lean over the wall to complete the work. It includes mason tending [assisting the bricklayers by, *inter alia*, maintaining supplies of bricks and mortar] and electrical installation incorporated into the brick wall during the overhand bricklaying process." *Id.* § 1926.450(b).

involved erecting the building's load-bearing, concrete-block walls and ultimately putting a brick veneer on the building.[5] When completed, the building measured 191 feet wide and 291 feet long and its walls were comprised of approximately 32,000 concrete blocks.

While Farmer Jack's was under construction, two OSHA compliance officers, Todd Jensen and Walter Visage, paid an unannounced visit to the site. On June 14, 2001 Jensen and Visage drove past the Farmer Jack's site—and observed what they thought were potential fall hazards—while returning to their office from an inspection at another location. Their observations prompted them to investigate further; accordingly, they parked their car on a side street at a distance of 50 yards from the site and used a handheld video recorder to document what they saw.

They observed at least five Storer employees on a scaffold laying the concrete blocks of the building's south-facing wall. The employees were not tied off, that is, they were not using a personal fall arrest system,[6] and the scaffold lacked guard-rails. The scaffold, which was located at the top of a mezzanine level approximately 14 feet above ground and which was inside the building's footprint,[7] consisted of two "frames" (each approximately six feet tall). The employees stood on the bottom frame while they worked, which put them approximately six feet above the mezzanine level. The placement of the scaffold required the masons to lay the concrete blocks by the "overhand bricklaying" method.[8] That is, after setting

---

[5] The OSHA violations at issue here arose in connection with the laying of concrete blocks to erect the building's exterior walls.

[6] A "personal fall arrest system" is "used to arrest an employee's fall" and "consists of an anchorage, connectors, a body belt or body harness and may include a lanyard, deceleration device, lifeline, or combination of these." 29 C.F.R. § 1926.450(b).

[7] Nearby power lines prevented the scaffold from being placed outside the building.

[8] OSHA's regulations define "overhand bricklaying" as the "process of laying bricks and masonry units." 29 C.F.R. § 1926.450(b).

each concrete block in mortar, the masons had to lean over the wall in order to strike the joints (*i.e.*, work the mortar into the interstices between the blocks using a concave tool) on the wall's face because the scaffold faced the inside of the wall under construction.

From their vantage point, Jensen and Visage identified two potential fall hazards that the employees working on the scaffold were exposed to. The first was a window opening in the wall under construction. They recorded Storer's employees laying concrete blocks near the window opening; the video shows one employee standing in front of the opening and another walking by it. The second hazard was the "materials staging area"—*i.e.*, the area used to store both the concrete blocks to be installed and a large vat of mortar—located on the scaffold at the western end of the wall and running perpendicular to it. One employee stood at the edge of the scaffold next to the mortar vat while another lifted concrete blocks onto the staging area from below. Both locations—the window opening and the materials staging area—were unguarded, that is, there was no fall protection. The OSHA officials then decided to inspect the Farmer Jack's site; they spoke with members of both Bostleman and Storer management as well as a consultant to Bostleman and they measured the distance to the ground from the two open areas. According to their measurements, the window opening in the wall exposed the Storer employees to a fall of 19.5 feet and those employees in the materials staging area risked a fall of 20 feet.

On August 1, 2001 OSHA cited Storer, alleging that Storer had violated 29 C.F.R. § 1926.451(g)(1) by failing to provide fall protection for its employees on the scaffold. The citation proposed a $6,000.00 penalty for Storer's "repeat"[9] violation.

The ALJ determined, not surprisingly, that concrete blocks are masonry units. *See Sec'y of Labor v. S.A. Storer & Sons Co.*, 19 O.S.H. Cas. (BNA) 2077, 2002 WL 31041865, at *3 (ALJ 2002).

[9] The citation was labeled "repeat" because Storer had been previously cited for a "substantially similar" violation of 29 C.F.R. § 1926.451(g)(1). *See S.A. Storer & Sons Co.*, 2002 WL 31041865,

Storer contested the citation, which triggered the hearing before the ALJ. *See* 29 U.S.C. § 659(c).

On March 1, 2002 the ALJ held a one-day hearing in Toledo, after which he affirmed the citation. *See Sec'y of Labor v. S.A. Storer & Sons Co.*, 19 O.S.H. Cas. (BNA) 2077, 2002 WL 31041865, at *1, *6–7 (ALJ 2002). Before the ALJ, Storer contended that it was exempt from having to protect its employees from the two fall hazards identified by Jensen and Visage—the unguarded window opening and materials staging area—because the employees were performing overhand bricklaying. *Id.* at *1. In his decision, the ALJ agreed that Storer's employees were performing overhand bricklaying but concluded that the overhand bricklaying exception offered Storer no defense because the employees were not laying blocks at the window opening or in the materials staging area.[10] *Id.* at *3. Storer additionally maintained that it had complied with the fall protection standard by establishing a "controlled access zone" (CAZ) on the mezzanine level. *Id.* at *4. The ALJ disagreed, explaining that, under the governing regulations, "the use of a CAZ as an alternative means of fall protection is not applicable in this case."[11] *Id.* at *5. The ALJ therefore affirmed the citation and assessed a $3,500.00 penalty. *Id.* at *6–7.

Storer petitioned the Commission for discretionary review of the ALJ's decision, *see* 29 C.F.R. § 2200.91, but the Commission declined and instead, on September 5, 2002, adopted the ALJ's decision. *See* 29 U.S.C. § 661(j). Storer's

at *5–6. The earlier citation involved an unguarded scaffold located more than ten feet above ground at another worksite in Toledo. *Id.* at *6.

[10] With respect to the materials staging area, the ALJ also rejected Storer's claim that the mortar vat and concrete blocks served as adequate fall protection. *Id.* at *4. Storer has not challenged that determination.

[11] The ALJ held that, under section 1926.451, an employer may not use a CAZ to protect its employees performing overhand bricklaying while on a scaffold. *Id.*; *see* discussion *infra* at II.B.

petition for review of the Commission's order is now before us pursuant to 29 U.S.C § 660(a).

## II.

The resolution of this case is governed by the ordinary standard of review of an administrative agency's action with one exception. *See A.J. McNulty & Co.*, 283 F.3d at 331; *Montgomery KONE, Inc. v. Sec'y of Labor*, 234 F.3d 720, 722 (D.C. Cir. 2000). We review the actions of two separate entities charged with different regulatory functions under the OSH Act: the Secretary promulgates and enforces regulations while the Commission exercises the fact-finding and adjudicatory authority. *Montgomery KONE, Inc.*, 234 F.3d at 722. We will not disturb the Commission's factual findings if they are "supported by substantial evidence on the record considered as a whole," 29 U.S.C. § 660(a); *A.J. McNulty & Co.*, 283 F.3d at 331; we also leave its legal conclusions intact unless they are "arbitrary, capricious, . . . or otherwise not in accordance with law." 5 U.S.C. § 706(a)(2); *A.J. McNulty & Co.*, 283 F.3d at 331. An agency's interpretation of its own regulations is entitled to "substantial deference" and even receives " 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.' "[12] Here, only the Secretary's interpretations receive this level of deference because she alone "has authority to make enforcement decisions and to render definitive interpretations of OSHA regulations." *A.J. McNulty & Co.*, 283 F.3d at 331 (citing *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 151–57 (1991)). The Commission "has no more authority to depart from the Secretary's interpretations of OSHA regulations than do we," *S.G. Loewendick & Sons, Inc. v. Reich*, 70

---

[12] *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) (quoting *Udall v. Tallman*, 380 U.S. 1, 16–17 (1965)); *see Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 150–51 (1991) ("court should give effect to agency's interpretation . . . so long as the interpretation 'sensibly conforms to the purpose and wording of the regulations' " (quoting *N. Ind. Pub. Serv. Co. v. Porter County Chapter of Izaak Walton League of Am., Inc.*, 423 U.S. 12, 15 (1975))).

F.3d 1291, 1294 (D.C. Cir. 1995), and its interpretation of the OSHA regulations is treated like that of the "nonpolicymaking" district court. *Martin*, 499 U.S. at 154; *Molineaux v. United States*, 12 F.3d 264, 267 (D.C. Cir. 1994). Storer does not contest the findings of fact;[13] the interpretations at issue were advanced by the Secretary before the Commission and in her brief to us.[14] *See* Secretary's Post-hearing Brief at 6–7; Respondent's Br. at 14–18.

Keeping these principles in mind, we turn to Storer's two claims. Storer first alleges that the Commission's affirmance of the OSHA citation for violating the fall protection standard at the window opening cannot stand because it erroneously interprets the exception contained in section 1926.451(g)(1)(vi). Second, Storer challenges the Commission's affirmance of the OSHA citation for the violation of the fall protection standard at the materials staging area, asserting that the Commission erroneously concluded that Storer did not meet the fall protection requirement by establishing a CAZ on the mezzanine level.

**A.**

The Commission agreed with the Secretary that Storer did not fit section 1926.451(g)(1)(vi)'s exception from fall protection for overhand bricklayers working on a scaffold next to the wall being built because its "employees were not engaged in overhand laying of concrete blocks at the window opening." *S.A. Storer & Sons Co.*, 2002 WL 31041865, at *3. Storer

---

[13] In its opening brief, Storer stated that "[t]he factual findings are not in dispute." Petitioner's Br. at 15.

[14] *See Martin*, 499 U.S. at 157 ("Secretary's interpretation of OSH Act regulations in an administrative adjudication, however, *is* agency action, not a *post hoc* rationalization of it" and "the Secretary's litigating position before the Commission is as much an exercise of delegated lawmaking powers as is the Secretary's promulgation of a workplace health and safety standard" (emphasis in original)); *S.G. Loewendick & Sons, Inc.*, 70 F.3d at 1298 ("Secretary certainly has the authority to offer definitive interpretations in the context of litigation").

charges that, in so concluding, the Commission effectively "eliminate[d]" the exception. Petitioner's Br. at 18–19. In Storer's view, the exception means just what it says: no fall protection is required "at the side next to the wall being laid," including at any opening in the wall. *Id.* The Secretary views the matter differently.

In her brief, the Secretary supplies a more thoroughgoing explication of the exception than the one she put forth before the Commission. Respondent's Br. at 14–18. The Secretary now explains that the exception "reflects a practical accommodation" and is thus "limited" to the situation in which "the presence of a guardrail between the mason and the wall being laid would interfere with or prevent the process of setting and mortaring the masonry." *Id.* at 14 (internal quotation omitted). Accordingly, the Secretary tells us, "if there is an opening . . . where wall is not being laid, then no deviation from the mandate that each employee performing [overhand] bricklaying shall be protected from falling is justified." *Id.* at 15 (internal quotation omitted). The Secretary further asserts that Storer finds an "unlimited exemption" in a "mere parenthetical," which "swallow[s]" the general requirement for fall protection and is "without practical or policy justification, does not promote worker safety, and must be rejected." *Id.* at 12, 17–18.

We believe the Secretary's interpretation does not " 'sensibly conform[ ] to the purpose and wording of the regulation[ ].' " *See Martin*, 499 U.S. at 151 (quoting *N. Ind. Pub. Serv. Co.*, 423 U.S. at 15). Section 1926.451(g)(1)(vi) provides that an employee performing overhand bricklaying from a scaffold must be protected from falling—by way of a personal fall arrest system or a guardrail—"from all open sides and ends of the scaffold . . . *except at the side next to the wall being laid.*" 29 C.F.R. § 1926.451(g)(1)(vi) (emphasis added). Under the plain language of the regulation, then, an employer need not provide fall protection for an overhand bricklayer "at the side [of the scaffold] next to the wall being laid." *Id.* When OSHA promulgated the regulation in 1996, it explained that "[p]aragraph (g)(1)(vi) of the final rule provides that fall protection (i.e., a personal fall arrest system or guardrail) be

provided on all open sides and ends of scaffolds from which employees are performing overhand bricklaying operations and/or related work, except those sides and ends next to the wall being laid." *Safety Standards for Scaffolds Used in the Construction Industry, Final Rule*, 61 Fed. Reg. 46,026, 46,066 (Aug. 30, 1996), *available at* 1996 WL 491490.

The Secretary, however, interprets the exception to mean that fall protection *is* required "at the side next to the wall being laid" *except* where it would interfere with or prevent the performance of the masonry work.[15] *See* Secretary's Post-hearing Brief at 6; Respondent's Br. at 15. By reading paragraph (g)(1)(vi) to *require* fall protection at the side next to the wall being laid *except* where it would impede masonry work being performed there, the Secretary inverts the plain language of the exception, which unmistakably says that is the one place that fall protection is *not* required. Because the Secretary's interpretation is incompatible with the exception's plain language, we cannot accept it. *See Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994); *S.G. Loewendick & Sons, Inc.*, 70 F.3d at 1294–96.

The Secretary maintains that her interpretation is supported by the preamble to the regulation, which states in part, "[t]he requirements for fall protection will apply at openings such as . . . openings in the walls of the structure surrounding the platform." 61 Fed. Reg. at 46,066. Read in its entirety, however, the preamble provides that "[p]aragraph (g)(1) does not apply where there are no 'open sides or ends' on the scaffold,"[16] but "will apply at openings such as hoistways, elevator shafts, stairwells, or similar *openings in*

---

[15] The Secretary's counsel confirmed this view at oral argument. Recording of Oral Argument at 18:03 ("[T]he fall protection is required everywhere that actual overhand bricklaying is not being conducted.").

[16] "Open sides and ends" are generally those "edges of a platform that are more than 14 inches (36 cm) away horizontally from a sturdy, continuous, vertical surface (such as a building wall) or a sturdy, continuous horizontal surface (such as a floor), or a point of access." 29 C.F.R. § 1926.450(b).

*the scaffold platform*, or openings in the walls of the structure surrounding the platform." *Id.* (emphasis added). Thus the preamble refers to the fall protection requirement applicable to openings in a scaffold that is otherwise "completely enclosed,"[17] not to the fall protection required for overhand bricklayers working at the side of a scaffold next to the wall being laid. *Id.* Moreover, in contrast to that part of the preamble applicable to a "completely enclosed" scaffold, the portion of the preamble dealing specifically with paragraph (g)(1)(vi) is unqualified: it provides simply that "fall protection . . . [must] be provided on all open sides and ends of scaffolds . . . *except those sides and ends next to the wall being laid.*" *See id.* (emphasis added).

The Secretary also contends that the "unlimited exemption" Storer advocates would "deny[ ] fall protection to all masons working on scaffolds" and is "without practical or policy justification." Respondent's Br. at 12, 18. Regarding the Secretary's first contention, not only does the Secretary distort Storer's position—it seeks to do only what the words of the exception allow it to do, *see* 29 C.F.R. § 1926.451(g)(1)(vi)—but Storer can hardly be blamed if OSHA's wording falls wide of its mark. *Diamond Roofing Co. v. Occupational Safety & Health Review Comm'n*, 528 F.2d 645, 649 (5th Cir. 1976) ("If a violation of a regulation subjects private parties to criminal or civil sanctions, a regulation cannot be construed to mean what an agency intended but did not adequately express."). The Secretary may be dissatisfied with the regulation's current formulation; if so, OSHA can amend or eliminate it. But she cannot do so by ascribing a meaning to words they simply do not have. As to the Secretary's second allegation, it is her own interpretation that disregards the policy justifications supporting the exception. As the Secretary recognizes, *see* Respondent's Br. at 15 n.8, two practical considerations undergird the exception from the fall protection standard for overhand bricklayers working

---

[17] According to OSHA, a scaffold is "completely enclosed" if "no perimeter face of the scaffold [is] more than 14 inches from a wall." 61 Fed. Reg. at 46,066.

at the side of the scaffold next to the wall being laid: first, the use of a conventional fall protection system often is infeasible; second, such a system may itself pose a fall hazard. OSHA has explained that

> [w]hile the use of guardrails, body belts, body harnesses, and safety nets is allowed during overhand bricklaying, the use of such systems often is not feasible. Guardrails pose obvious interference problems and safety nets cannot be attached to many load-bearing or other brick walls as such walls are not capable of supporting the loads imposed by a net system. Body belt/harness systems often become entangled in close quarters and in those cases where suitable anchorages can be found, lanyards and lifelines pose serious tripping hazards to the mason tenders who could themselves trip and go over the edge.[18]

According to OSHA's own observations, then, requiring fall protection along the side of the scaffold next to the wall being laid, except where the bricklayers are in fact working at any moment (as the Secretary's interpretation purports to require), raises a serious feasibility issue and may even increase the fall hazard.[19]

---

[18] *Safety Standards for Fall Protection in the Construction Industry, Notice of Proposed Rulemaking*, 51 Fed. Reg. 42,718, 42,722 (Nov. 25, 1986), *available at* 1986 WL 116297; *see also Safety Standards for Fall Protection in the Construction Industry, Final Rule*, 59 Fed. Reg. 40,672, 40,688 (Aug. 9, 1994), *available at* 1994 WL 411799 (a conventional fall protection system "sometimes is not feasible when overhand bricklaying and related operations are taking place" because "guardrails may interfere with the performance of work; safety net systems often cannot be safely attached to or supported by the structure; and personal fall arrest systems often become tangled or pose serious trip and fall hazards").

[19] The fall protection standard applicable to overhand bricklaying performed from a scaffold and the standard applicable to the same work but performed from other elevated surfaces found their way into different subparts of OSHA's regulations applicable to the construction industry: the standard for overhand bricklaying from a scaffold ended up in subpart L, *see* 29 C.F.R. § 1926.451(g)(1)(vi),

The Secretary's interpretation of her regulations must "reflect clear, rational decisionmaking that gives regulated members of the public adequate notice of their obligations." *S.G. Loewendick & Sons, Inc.*, 70 F.3d at 1297. Neither the Secretary's nor the Commission's interpretation of the exception contained in paragraph (g)(1)(vi) does so. Because the Commission erroneously interpreted paragraph (g)(1)(vi), *see S.A. Storer & Sons Co.*, 2002 WL 31041865, at *3, we vacate its order with respect to the window opening area of the wall being laid. *S.G. Loewendick & Sons, Inc.*, 70 F.3d at 1292, 1298.[20] We now turn to Storer's challenge regarding the materials staging area of the scaffold.

---

while the standard for overhand bricklaying from other elevated surfaces is included in subpart M, *see* 29 C.F.R. § 1926.501(b)(9). The two-branched standards nevertheless grew from a common policy stalk. In its proposed subpart L standards for scaffolds (published in the Federal Register on the same day as its proposed subpart M standards), OSHA explained that the "[r]equirements to protect employees performing overhand bricklaying operations from supported scaffolds are provided in § 1926.501 [in subpart M]," *Safety Standards for Scaffolds Used in the Construction Industry, Notice of Proposed Rulemaking*, 51 Fed. Reg. at 42,680, 42,707 (Nov. 25, 1986), *available at* 1986 WL 116296, which suggests that at one point the fall protection standards for overhand bricklaying—whether performed from a scaffold or another elevated surface—reflected common concerns. That the two standards continue to reflect common concerns is plain from OSHA's statement in the preamble accompanying the subpart L regulations that "[p]aragraph (g)(1)(vi) of the final rule is consistent with § 1926.501(b)(9), which addresses fall protection for employees performing overhand bricklaying while on elevated surfaces other than scaffolds." 61 Fed. Reg. at 46,066. Given this statement, plus the fact that OSHA offered no other justification for excepting fall protection "at the side next to the wall being laid," 29 C.F.R. § 1926.451(g)(1)(vi), we cannot but conclude that the exception reflects the same safety and feasibility concerns that underlie the subpart M fall protection standard for overhand bricklaying. To be clear, however, we do not embrace any policy preference. The Secretary is free, so far as the court is concerned, to advance one objective (safety) instead of another (efficiency). The Secretary cannot do so, however, through an interpretation that flouts the exception's plain language.

[20] At oral argument, Storer asserted that its employees *were* doing overhand bricklaying along the building's western wall near

14

**B.**

Storer also maintains that it provided fall protection at the materials staging area by establishing a CAZ on the mezzanine level. Petitioner's Br. at 20. The gist of Storer's position appears to be that CAZs "are specifically permitted when used to control access to areas where overhand bricklaying and related work are taking place.... The regulations for [CAZs] do not make an exception for when overhand bricklaying is performed from scaffolds. Nor could [they]...." *Id.* at 13–14; *see also id.* at 20. The Commission rejected this argument, *S.A. Storer & Sons Co.*, 2002 WL 31041865, at *4, and so do we; it founders because it disregards the plain language of the applicable regulations. *See* 29 C.F.R. §§ 1926.451(g)(1)(vi), 1926.500(a)(2)(i), 1926.501(b)(9) note.

OSHA's fall protection regulations provide that an employer may, in certain instances, *see id.* § 1926.501(b)(2)(i), (9)(i), (12)-(13), safeguard its employees working in construction areas by establishing a CAZ, an area where access is restricted and "certain work ... may take place without the use of guardrail systems, personal fall arrest systems, or safety net systems." *Id.* §§ 1926.500(b), 1926.502(g). Under subpart M

the materials staging area. But when pressed as to where in the record there was support for the assertion, Storer's counsel stated, "I don't know that the record specifically states it." Recording of Oral Argument at 22:26. He referred the court to still images taken from the OSHA video which were used as exhibits at the hearing before the ALJ. *Id.* Not only do the images fail to show that Storer employees were working on the wall near the materials staging area but Storer employees' testimony is to the contrary. Joint Appendix 177, 221, 247. Moreover, Storer did not raise the issue in either of its briefs, *see Corson & Gruman Co. v. NLRB*, 899 F.2d 47, 50 n.4 (D.C. Cir. 1990) ("We require petitioners and appellants to raise all of their arguments in the opening brief to prevent 'sandbagging' of appellees and respondents and to provide opposing counsel the chance to respond.")—indeed, its opening brief tends to contradict the position Storer's counsel took at oral argument. *See* Petitioner's Br. at 9, 10, 13, 20.

of Part 1926, such a zone may be used to protect employees "performing overhand bricklaying and related work 6 feet (1.8 m) or more above lower levels." *Id.* § 1926.501(b)(9)(i). Storer's position might have had some appeal if the quoted provision were all that OSHA said about an employer's obligation to protect overhand bricklayers from falling. But it is not.

Instead the regulations do precisely what Storer claims they do not: they prevent an employer from using a CAZ to protect employees from falling while they perform overhand bricklaying from a scaffold. *See id.* §§ 1926.451(g)(1)(vi), 1926.500(a)(2)(i), 1926.501(b)(9) note; *see also* 61 Fed. Reg. at 46,066; *Safety Standards for Fall Protection in the Construction Industry, Final Rule*, 59 Fed. Reg. 40,672, 40,689 (Aug. 9, 1994), *available at* 1994 WL 411799. Subpart M makes clear that its fall protection standard does *not* apply to employees working while on a scaffold: "[r]equirements related to fall protection for employees working on scaffolds are provided in subpart L." 29 C.F.R. § 1926.500(a)(2)(i). Moreover, the very regulation in subpart M which allows for the use of a CAZ to protect overhand bricklayers includes the following "Note," "[b]ricklaying operations performed on scaffolds are regulated by subpart L—Scaffolds of this part." *Id.* § 1926.501(b)(9); *see also* 59 Fed. Reg. at 40,689 ("OSHA agrees that it is appropriate for bricklaying performed from scaffolds to be regulated under subpart L, Scaffolds, rather than under subpart M and, accordingly, the Agency is adding a note to subpart L which so indicates."). The pertinent provision in subpart L, paragraph (g)(1)(vi), does not allow the use of a CAZ to protect employees from falling; instead it provides that "employees performing overhand bricklaying operations from a supported scaffold shall be protected from falling . . . by the use of a personal fall arrest system or guardrail system." 29 C.F.R. § 1926.451(g)(1)(vi). The Commission thus properly rejected Storer's claim that the CAZ on the mezzanine level constituted sufficient fall protection for its employees working at the materials staging area of the scaffold. *See id.*

### III.

For the foregoing reasons, we vacate the Commission's order and remand to that body for further proceedings consistent with this opinion.

*So ordered.*