Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

#### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued April 2, 2004        Decided July 23, 2004

No. 03–1213

COMMUNICATIONS AND CONTROL, INC.,
APPELLANT

v.

FEDERAL COMMUNICATIONS COMMISSION,
APPELLEE

Appeal of Orders of the
Federal Communications Commission

*Timothy E. Welch* argued the cause for the appellant.

*Roberta L. Cook*, Counsel, Federal Communications Commission, argued the cause for the appellee. *John A. Rogovin*, General Counsel, and *Daniel M. Armstrong*, Associate General Counsel, were on brief.

Before: HENDERSON, RANDOLPH and ROBERTS, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LeCRAFT HENDERSON, *Circuit Judge*:

---

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*These changes in latitudes, changes in attitudes;*
*Nothing remains quite the same.*
*Through all of the islands and all of the highlands,*
*If we couldn't laugh we would all go insane*

— JIMMY BUFFETT, CHANGES IN LATITUDES,
CHANGES IN ATTITUDES (ABC 1977)

Appellant Communications and Control, Inc. (CCI) would no doubt agree that geographic change can make all the difference. For CCI a one-degree change in longitude would have allowed its transmitter to operate from *terra firma* rather than not at all. Instead of permitting CCI to amend its license to reflect the transmitter's true location, however, the Federal Communications Commission (FCC or Commission) cancelled the license, concluding that no station could have been authorized to operate where CCI's application specified—a dot on the Pacific Ocean. CCI now appeals, claiming that the Commission arbitrarily and capriciously refused to allow a correction. *See* 5 U.S.C. § 706(2)(A). We agree and, accordingly, reverse and remand.

I.

Following a lottery of spectrum in the 220–222 megahertz (MHz) band, the Commission in 1993 granted CCI a broadcast license to operate a non-nationwide Phase I 220 MHz trunked radio system under the call sign WPCX448.[1] CCI's application proposed to transmit from Mount Allison, Milpitas, California, at a latitude of 37° 29′ 56″ North and a longitude of 122° 52′ 16″ West. But the longitude coordinate CCI supplied in fact indicated a location one degree—or approximately 88 kilometers—west of Mount Allison in the Pacific Ocean. Unaware of CCI's error, the Commission granted the application. Still unaware of the error itself, CCI supplied the bad longitude coordinate again when notifying

_____

[1] The same day the Commission granted CCI's application it also granted Kitsap Cellular a license to operate a Phase I 220 MHz system under the call sign WPCX469 at a site near Stockton, California, less than 120 kilometers from CCI's site on Mount Allison. Kitsap Cellular later transferred its license to ComTech.

the Commission that it had constructed its station and was operating from Mount Allison.

Months later, CCI informed the Commission of an "inconsistency with the [a]ntenna [l]ongitude" in its application and requested that the Commission change the longitude coordinate listed on its license from 122° 52′ 16′′ West to *121° 52′ 16′′* West. Deferred Appendix (D.A.) 26. The Land Mobile Branch (Branch) of the Licensing Division (Division) of the Wireless Telecommunications Bureau (WTB) denied CCI's request, finding that CCI failed to make "a timely effort to correct its application." D.A. 27. The Branch further instructed CCI to submit its license for cancellation, explaining that "applications are processed based on the coordinate information provided by the applicant, and since there are no frequencies available at [CCI's] requested location, . . . [CCI] should submit its license for cancellation." D.A. 27.

CCI responded to the Branch's letter with another of its own. Its second letter—styled a "Second Request for Coordinate Correction"—again sought to correct the coordinate and included an engineering study in an effort to show that its operation from Mount Allison adequately protected Com-Tech's neighboring station (call sign WPCX469) from harmful interference. The Branch again denied CCI's request, this time rejecting CCI's interference analysis as untimely and wrong. Relying on its own technical analysis, the Branch explained that CCI failed to meet the exception for short-spacing contained in section 90.723(f) of the Commission rules[2] because "station WPCX469 does not receive 10dB of protection" and "the 28 dBu contour of station WPCX448 overlaps the 38 dBu contour of station WPCX469 by more than 20 kilometers." D.A. 32.

---

[2] Section 90.723 provided at the time that "the separation of co-channel base stations shall be 120 kilometers. Shorter separations will be considered on a case-by-case basis upon submission of a technical analysis indicating that at least 10 dB protection will be provided to an existing station's 38 dBu signal level contour." 47 C.F.R. § 90.723(f) (1991 version).

CCI responded with another letter; this one met a slightly different fate from the previous two. Although the Branch rejected CCI's claim that the "incorrect coordinate[ ] on its license is a typographical error which has no bearing on its operations at Mount Allison," explaining that "[s]ince CCI did not timely request a change of its coordinates, its application was processed consistent with its stipulated coordinates," it nevertheless offered that "[i]f CCI desires to modify its license to correct those coordinates, it must wait for the filing window for 220 MHz applications to reopen." D.A. 35. The Branch further proposed that, in the meantime, "[d]ue to the circumstances, CCI may request STA [Special Temporary Authority] to obtain legal authority for its operation on Mount Allison." *Id.* CCI took the Branch's advice and the Branch granted it STA for six months.

Before the STA expired, CCI requested an extension. The Branch denied the request, however, noting that ComTech had complained that CCI's operations were interfering with its own and that CCI was "not in compliance with Rule 90.723(f) at the requested relocation." D.A. 50. CCI responded by submitting an application to modify its license to allow it to permanently transmit from Mount Allison and, shortly thereafter, by petitioning the Branch for reconsideration of the denial of its extension request.

Following the Branch's denial of the extension request, the Commission separately advised CCI of ComTech's interference complaint and ordered it "to cease operati[ng]."[3] D.A. 66. CCI responded by reminding the Commission that its petition for reconsideration remained pending before the Branch and stated that it would "await further review ... before determining whether the operating status [of] Station WPCX448 should be altered." D.A. 67.

---

[3] This notice was followed by two more. The second warned that CCI's "evident continued operation of Station WPCX–448 in open defiance of the Commission's warning is an extremely grave matter" and instructed it to "cease the operation of WPCX–448 IMMEDIATELY." D.A. 191. The third notice was similar to the second.

5

The Division later denied CCI's petition for reconsideration along with its application for authority to permanently transmit from Mount Allison. The Division concluded, as the Branch had before, that CCI failed to comply with Commission rule 90.723(f) because it "proposes to operate 88.4 Kilometers from Comtech's station" and its proposed relocation failed to "provide 10 dB of protection to Comtech's protected site." D.A. 107. CCI next applied to the Commission for review of the Division's decision.[4] The Commission was no more receptive than the Division.

Finding that the staff correctly instructed CCI to submit its license for cancellation, the Commission denied CCI's application for review. *Communications & Control, Inc., Request for Extension of Special Temporary Authority & Modification of Authorization of 220 MHz System WPCX448 & Comtech Communications, Inc., Request for Extension of Special Temporary Authority & Modification of Authorization of 220 MHz System WPCX469*, Memorandum Opinion & Order, 15 FCC Rcd 5428 (2000) [hereinafter *First Order*]. CCI's license was void *ab initio*, said the Commission, because it flowed from an administrative error: CCI would have been granted no license had the Commission realized that CCI's requested coordinates were for a site in the Pacific Ocean. *Id.* at 5432, ¶12. The Commission also rejected CCI's contention that it, the Commission, should have discovered the error in processing the application, observing that the burden of providing accurate information rests on the applicant—not the Commission—and that, accordingly, the Commission "is entitled to rely on the site coordinates an applicant provides." *Id.*

---

[4] CCI also requested permission for its station "to remain silent" pending the resolution of its application for review. *See* D.A. 193–96. The Commission granted the request, agreeing that "CCI's silence pendente lite at the Mt. Allison facility should not prejudice its claim to an authorization." D.A. 197. Before resolving CCI's application for review, the Commission in February 1999 renewed CCI's license "subject to the outcome of [CCI's] pending petitions for the facility." D.A. 222 (capitalization altered). In May 2002,

The Commission also offered a two-fold response to CCI's contention that it was entitled to an opportunity to correct the error on its application. *Id.* at 5433, ¶13. The Commission first deemed CCI's argument "irrelevant," stating that the "burden is on the applicant to provide accurate site information in its application." *Id.* The Commission then noted that, even if CCI's original application had contained the correct coordinates, CCI would not have been licensed because CCI's application would have been "mutually exclusive" with ComTech's application and the latter, based on its higher filing priority, would have been granted the only license. *Id.*

Further, the Commission rejected CCI's argument that it should have been able to modify its application under the procedures outlined in the Commission's Second Report & Order in the *Amendment of Part 90 of the Commission's Rules to Provide for the Use of the 220–222 MHz Band by the Private Land Mobile Radio Service* docket.[5] *Id.* at 5433, ¶14. This procedure was unavailable to CCI, the Commission said, because the right to relocate was available only to an applicant holding a valid 220 MHz license and CCI, as the Commission earlier concluded, had none. *Id.* As the Commission put it, "because CCI's initial license was void, CCI was effectively seeking a new license and this procedure was unavailable." *Id.* The Commission also iterated an earlier point: CCI would not have been authorized to operate from Mount Allison even had it initially applied to do so given its lower filing priority. *Id.* The Commission concluded, therefore, that the Branch "proper[ly] . . . reject[ed] a modification application for a site that could not have been initially granted to the applicant." *Id.*

The Commission's order did not end the matter. CCI thereafter petitioned for reconsideration, which petition the

---

however, after denying CCI's second application for review, the Commission cancelled the license.

[5] In that order, the Commission announced a procedure allowing a 220 MHz licensee to modify its license by relocating to a nearby location. *See Amendment of Part 90 of the Commission's Rules to Provide for the Use of the 220–222 MHz Band by the Private Land Mobile Radio Service*, Second Report & Order, 11 FCC Rcd 3668, 3668–71, ¶¶1, 8–10 (1996) (codified in 47 C.F.R. pt. 90).

Chief of the Commercial Wireless Division of the WTB dismissed as repetitious because CCI presented no facts or circumstances the Commission had not already considered. *Communications & Control, Inc., Request for Extension of Special Temporary Authority & Modification of Authorization of 220 MHz System WPCX448*, Memorandum Opinion & Order, 15 FCC Rcd 14,969 (Commercial Wireless Div. 2000). CCI then applied for review a second time with the Commission and it denied the application as repetitious. *Communications & Control, Inc., Request for Extension of Special Temporary Authority & Modification of Authorization of 220 MHz System WPCX448*, Memorandum Opinion & Order, 16 FCC Rcd 19,155 (2001) [hereinafter *Second Order*]. The Commission concluded that the Commercial Wireless Division's *Ann Leggett* decision,[6] which CCI had called to the Commission's attention, did not constitute new evidence or changed circumstances meriting reconsideration because it "is distinguishable and does not support a different result in CCI's case."[7] *Id.* at 19,156, ¶6.

CCI then petitioned for reconsideration of this Commission order, also unsuccessfully. This time the Commercial Wireless Division's Deputy Chief denied the petition as repetitious, explaining that "CCI's present petition for reconsideration relies on no new facts or circumstances, but repeats–once again–claims that have been repeatedly rejected." *Commu-*

---

[6] *Ann Leggett, Request for Modification of Phase I Non–Nationwide 220 MHz License Station WPCV789, New London, Conn.*, Order, 15 FCC Rcd 2574 (Commercial Wireless Div. 2000) [hereinafter *Ann Leggett*].

[7] In distinguishing the *Ann Leggett* decision, the Commission explained that, in *Ann Leggett*, "unlike CCI's case, the incorrect coordinates specified in the original application were for a grantable site, and therefore the license was not void *ab initio*." 15 FCC Rcd at 19,156, ¶6. The Commission also noted that "the modified site in *Ann Leggett* was also grantable because it did not conflict with any other application or license." *Id.* at 19,156–57, ¶6. Because CCI's case did not involve the same circumstances, the Commission concluded that "no issues were raised by CCI's petition that warrant further review." *Id.* at 19,157, ¶6.

*nications & Control, Inc., Request for Extension of Special Temporary Authority & Modification of Authorization of 220 MHz System WPCX448*, Order, 17 FCC Rcd 9359, 9361, ¶7 (Commercial Wireless Div. 2002). CCI once more applied for review of this decision with the Commission, which it once more denied as repetitious, finding that "[w]ith each successive pleading, CCI has essentially reiterated the same basic points in support of its request for relief, and those claims have already been rejected twice by the Commission." *Communications & Control, Inc., Request for Extension of Special Temporary Authority & Modification of Authorization of 220 MHz System WPCX448*, Memorandum Opinion & Order, 18 FCC Rcd 13,448, 13,451, ¶10 (2003) [hereinafter *Third Order*]. CCI now appeals all three Commission orders—*First Order*, 15 FCC Rcd 5428; *Second Order*, 16 FCC Rcd 19,155; *Third Order*, 18 FCC Rcd 13,448—to us.

## II.

Under the Administrative Procedure Act (APA), we set aside a Commission action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see, e.g., Ca. Metro Mobile Communications, Inc. v. FCC*, 365 F.3d 38, 43 (D.C. Cir. 2004) [hereinafter *CMMC*]. The scope of our APA review, however, is narrow. *See Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "We do not prefer our judgment to that of the Commission and require only that it examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *CMMC*, 365 F.3d at 43 (internal quotation marks omitted).

The Commission gave two reasons for canceling CCI's license rather than allowing its technical modification, neither of which adequately supports its decision. The Commission's simple *ipse dixit* that CCI's typographical error rendered its license void *ab initio* does not do it, especially in light of the

Commission's practice of correcting, without much ado, typographical errors such as this one.[8] The Commission's departure from this practice, with *no* explanation, renders its void *ab initio* rationale arbitrary and capricious. *See, e.g., Motor*

---

[8] The Commission routinely allows license applicants in other services to correct typographical errors. *See, e.g., Porta–Phone Paging Licensee Corp. for Modification of License For Paging Serv. Station KNKD661 to Establish an Additional 158.10 MHz Base Station at Thomasville, Ga.*, Order on Reconsideration, 13 FCC Rcd 5229, 5231, ¶¶6–7 (Commercial Wireless Div. 1998) (reinstating license application because Commission allows "applicants to make minor modifications to dismissed applications if inconsistent information was previously supplied, the correct information is found within the four corners of the application, and the correct information can be easily determined"); *Peter J. Rinaldi, Luther Jackson Lazarus, James Washington D/B/A Washington Broad., Cloud Nine, Inc., for Construction Permit For a New FM Station in Natchez, Miss. Channel 247A (97.3 MHz)*, Hearing Designation Order, 5 FCC Rcd 5649, 5649, ¶¶3–4 (Audio Servs. Div. 1990) (allowing amendment to clarify station's geographic coordinates); *Milledgeville Mobilefone, Inc., For Authority to Construct an Additional Facility in the Public Land Mobile Serv. for Station KUC919 to Operate of Frequency 158.70 MHz at Macon, Ga.*, Order on Reconsideration, 3 FCC Rcd 1998, 1998, ¶4 (Mobile Servs. Div. 1988) (reinstating application containing "an extremely minor typographical error which involves the mis-typing of a single digit"); *Paging Network of Los Angeles, Inc., For Reconsideration of Authorizations for Facilities in the 931 MHz Band in the Paging and Radiotelephone Serv.*, 15 FCC Rcd 6720, 6720, ¶2 (Policy & Rules Branch 1999) (granting petition for reconsideration of dismissal of application for failure to pay applicable fee because coordinate correction constituted "minor amendment"); *cf. Coachella Valley Wireless Corp., For a Construction Permit for a New FM Station on Channel 249A in Mecca, Ca.*, 7 FCC Rcd 4252, 4252–53, ¶5 (1992) (dismissing application because staff unable to determine "which set of coordinates was correct" but noting "[a]lthough a coordinate discrepancy is considered an acceptability defect, the staff will, within reason, nonetheless attempt to resolve any discrepancies found in an application"). Furthermore, as discussed above, the Commission allowed another licensee in the 220–222 service to correct a typographical error before denying CCI's similar request. *See Ann Leggett*, 15 FCC Rcd at 2575, ¶4.

*Vehicles Mfrs. Ass'n*, 463 U.S. at 57 ("[A]n agency changing its course must supply a reasoned analysis." (internal quotation marks omitted)).

Moreover, the Commission's void *ab initio* rationale makes no sense. The license the Commission granted CCI specified Mount Allison as the transmitter site, a fact later confirmed by CCI itself when it notified the Commission that it had built its transmitter and was operating from Mount Allison. For the Commission *seven years later* to pronounce CCI's license void *ab initio* because the geographic coordinates provided specify a point in the Pacific Ocean is, politely speaking, unreasonable. The Commission must have known—from CCI's license and CCI's notice—that CCI was operating from a mountain, not the ocean; with minimal effort the Commission staff could have determined the precise location.

The Commission is of course entitled to demand strict adherence to its rules, *see Salzer v. FCC*, 778 F.2d 869, 871, 875 (D.C. Cir. 1985), but it cannot so proclaim on the fly, as it did here. *See Salzer*, 778 F.2d at 871 ("[F]undamental fairness . . . requires that an exacting application standard, enforced by the severe sanction of dismissal without consideration on the merits, be accompanied by full and explicit notice of all prerequisites for such consideration."); *Bamford v. FCC*, 535 F.2d 78, 82 (D.C. Cir.) ("elementary fairness requires clarity of standards sufficient to apprise an applicant of what is expected"), *cert. denied*, 429 U.S. 895 (1976). The Commission likewise may require an applicant to bear the full cost of its own mistake, *see RKO Gen., Inc. v. FCC*, 670 F.2d 215, 232 (D.C. Cir. 1981), *cert. denied*, 456 U.S. 927 (1982), but, again, to do so here, it had to explain why it imposed that requirement on CCI while regularly allowing others to bear no cost. *See* slip op. *supra* note 8.

The Commission's second rationale fares no better. It offers only a partial, and ultimately inadequate, explanation of the inevitable dismissal of CCI's application—even had it contained the correct coordinates at the outset—because CCI requested a transmitter site less than 120 kilometers from ComTech's site. The sites would have been deemed "mutually exclusive," the Commission says, because section 90.723 of

the Commission rules provides that "the separation of co-channel base stations shall be 120 kilometers."  47 C.F.R. § 90.723(f) (1991 version); *see also id.* § 90.711(a) (1991 version).  This general requirement, however, is significantly qualified by the rule's second sentence, which states that a station separation of less than 120 kilometers "will be considered on a case-by-case basis upon submission of a technical analysis indicating that at least 10 dB protection will be provided to an existing station's 38 dBu signal level contour." *See id.* § 90.723(f) (1991 version).  While the Branch and the Division acknowledged this qualifier but nonetheless concluded that CCI was ineligible, *see* slip op. *supra* pp. 3–5, the Commission did not mention the provision or, more significantly, why it was unavailable to CCI.  It did not even endorse the Branch's and the Division's rejection of its applicability to CCI.  The Commission counsel now insists that the Commission's apparent oversight is not an oversight at all but instead an implicit, and to its mind reasonable, interpretation of its rule to the effect that CCI could not fit the exception. *See* Appellee's Br. at 31–32.  But we cannot evaluate the reasonableness of an interpretation the Commission did not set forth.  *See PanAmSat Corp. v. FCC*, 198 F.3d 890, 897 (D.C. Cir. 1999) ("We do not ordinarily consider agency reasoning that 'appears nowhere in the [agency's] order.'" (quoting *Graceba Total Communications, Inc. v. FCC*, 115 F.3d 1038, 1041 (D.C. Cir. 1997))); *see also SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).  Although the Commission counsel—before us—proffers a detailed explication of the Commission's *sub silentio* interpretation, we cannot consider it because it comes too late.[9]  *See* Appellee's Br. at 32–33.  In any event, such an implied interpretation would conflict with the regulation's plain language which calls for "case-by-case" consideration, 47 C.F.R. § 90.723(f) (1991 version).  *See S.A.*

---

[9] *See Chenery Corp.*, 332 U.S. at 196 ("[A] simple but fundamental rule of administrative law . . . is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency" and "that basis must be set forth with such clarity as to be understandable.").

*Storer & Sons Co. v. Sec'y of Labor*, 360 F.3d 1363, 1368 (D.C. Cir. 2004) ("An agency's interpretation of its own regulations is entitled to substantial deference and even receives controlling weight unless it is plainly erroneous or inconsistent with the regulation." (internal quotation marks omitted)); *id.* at 1369 (holding Secretary's inversion of regulation's plain language unreasonable).

\* \* \*

For the foregoing reasons, we reverse the Commission's order, *see First Order*, 15 FCC Rcd 5428, denying review of CCI's application for review, *see* First Application for Review, *reprinted in* D.A. 111–29, and remand the matter for further consideration in accordance with this opinion.

*So ordered.*